[Civ. No. 59883. Second Dist., Div. Two. Dec. 16, 1980.]

ED BARTLEY, Plaintiff and Appellant, v.
CALIFORNIA ASSOCIATION OF REALTORS,
Defendant and Respondent.

**COUNSEL**

David Barry and Barry & Finley for Plaintiff and Appellant.

Moses Lasky, John E. Munter, Terry M. Gordon and Lasky, Haas, Cohler & Munter for Defendant and Respondent.

**OPINION**

**ROTH, P. J.**—Appellant entered into a written contract with Ruth Miller, doing business as Red Carpet Realtors, Inc., which by its terms

engaged him as an independent contractor for the purpose of selling, leasing or renting real estate.

He subsequently filed his complaint for injunction, declaratory relief and damages against Ms. Miller, dba Red Carpet Realtors, and the California Association of Realtors (CAR), respondent herein, alleging inter alia that appellant is a licensed real estate salesman in California; that his contract with Red Carpet provided that he would be allowed to use certain of its facilities in exchange for a percentage of the commissions he earned thereunder; that a clause in the agreement required him to transact business only at a commission rate set by Red Carpet; that he and all other salespersons in the Red Carpet office were forced to sign the contract; that each of these persons are independent business entities in active competition with each other for sales; and that appellant was willing and able to effect sales at lesser commissions than those specified by Red Carpet but that such was not permitted by it.

Respecting respondent, it was likewise alleged that: "Defendant California Association of Realtors (CAR) is a statewide trade association of Realtors. Many of the principals of Red Carpet are members of CAR. Of all the real estate firms in California active in residential real estate, 95% or more of these firms have principals who are members of CAR. All of the principals of Red Carpet and all of the principals of real estate firms who are members of CAR have conspired together with CAR to fix prices and restrain trade throughout California by suppressing the independent business judgment of their brokers and sales people. CAR has actively assisted this conspiracy. One of the acts of CAR in furtherance of this conspiracy is the publishing of the independent contractor contract, Exhibit A, which plaintiff was forced to sign. This contract is CAR standard form #1-14. CAR has repeatedly and forcefully urged all of its members throughout California to enter into this contract and nearly all realtors in California have done so."

Finally, it was alleged all of the foregoing resulted in violation of various provisions of the Business and Professions Code which are part of what is denominated the Cartwright Act, in that the same constituted a price fixing conspiracy.

A second cause of action, incorporating the identical allegations, asserted the facts described caused an unreasonable and substantial restraint of trade, also in violation of that statute.

Respondent's special demurrer for uncertainty[1] and its general demurrer for failure to state a cause of action were both sustained as to each count with leave to amend. Upon appellant's advice to the trial court that he elected not to amend because nothing could be done "to more clearly allege the causes of action in the complaint," the complaint was dismissed with prejudice as to CAR. The appeal is from the order of dismissal.

Various theories are set out in the briefs of the parties in support of and in opposition to the conclusion reached by the trial court. We are satisfied, however, that whatever may be the merits of these contentions, the matter is one which is properly resolved by those considerations respecting an action charging civil conspiracy passed upon in *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481]. It was there reiterated that: ■ "'The gist of an action charging civil conspiracy is not the conspiracy but the damages suffered. [Citations.] It is the long established rule that a conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. [Citations.] . . . The advantage to the pleader in charging a conspiracy is to implicate all participating in the common design and thus fasten liability on him who agreed to the plan to commit the wrong as well as on him who actually carried it out. [Citations.] ■ "The conspiracy "may be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." [Citations.] [¶] ■ To state a cause of action for conspiracy, the complaint must allege (1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts. [Citations.]' (*Wise* v. *Southern Pac. Co.* 223 Cal.App.2d 50, 64-65. . . .) General allegations of agreement have been held sufficient (*Farr* v. *Bramblett*, 132 Cal.App.2d 36, 47. . .), and the conspiracy averment has even been held unnecessary, providing the unlawful acts or civil wrongs are otherwise sufficiently alleged. (*Hege* v. *Worthington, Park & Worthington*, 209 Cal.App.2d 670, 678. . . .) Significantly, however, '[t]he activities condemned by the anti-trust law are contracts, combinations, or conspiracies in restraint of . . . trade or commerce.

---

[1]. The demurrer on this ground was premised on the contention it did not appear;
  (a) What breaches of duty (CAR) was alleged to have committed to the injury of plaintiff;
  (b) What injury was inflicted to plaintiff by any act of (CAR);
  (c) How any conduct or act of (CAR) would injure plaintiff in the future.

Such contracts, combinations or conspiracies in restraint of...trade or commerce cannot be alleged generally in the words of the statute but the facts must be set forth which indicate the existence of such contracts, combinations or conspiracies.'...[¶] General allegations of the existence and purpose of the conspiracy are insufficient and appellants must allege specific overt acts in furtherance thereof. 'Conceding the formation of a conspiracy is charged, having for its object a common design and purpose, still we find no statement in the bill as to any specific overt acts done by defendants in pursuance of that design and purpose.' (*Davitt* v. *American Bakers' Union*, 124 Cal. 99, 101....)" (*Id.*, at pp. 316-318.) (See also *117 Sales Corp.* v. *Olsen* (1978) 80 Cal. App.3d 645, 648-650 [145 Cal.Rptr. 778]; cf. *Saxer* v. *Philip Morris, Inc.* (1975) 54 Cal.App.3d 7, 20 [126 Cal.Rptr. 327].)

■ Here it is alleged generally that respondent conspired with the principals of Red Carpet and the principals of all real estate firms which are its members to fix prices and restrain trade throughout California by suppressing the independent business judgment of their brokers and sales people, in that no such person is permitted to engage in transactions for commissions less than those specified by the respective employing firms. The only specific connection of respondent to the claimed unlawful combination, however, is that it published the contract in issue and that it "repeatedly and forcefully" urged its members to enter into it.

Were these latter allegations shown to be true, they would not, in our view, either directly or inferentially constitute that form of substantial evidence necessary to establish the charged conspiracy and are inadequate, without more, to render the stated causes immune from demurrer. Accordingly, the trial court's determination must be sustained.

The order appealed from is affirmed.

Compton, J., and Beach, J., concurred.