**GILBUILT HOMES, INC. a/k/a Gilbilt Homes, Inc., Plaintiff, Appellant,**

v.

**CONTINENTAL HOMES OF NEW ENGLAND, A DIVISION OF WYLAIN, INC., Defendant, Appellee.**

No. 81–1200.

United States Court of Appeals, First Circuit.

Submitted Sept. 10, 1981.

Decided Dec. 16, 1981.

Jonathan Prew, Nashua, N. H., and Robert W. Gardner, Ayer, Mass., on brief, for plaintiff, appellant.

Joseph A. Millimet, William C. Saturley and Devine, Millimet, Stahl & Branch Professional Associates, Manchester, N. H., on brief, for defendant, appellee.

Before COFFIN, Chief Judge, VAN DUSEN [*] and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

This is an appeal by plaintiff Gilbuilt Homes, Inc., from an order of the district court dismissing its complaint for failure to state a claim under various antitrust statutes. From a nearly incoherent set of complaints and motion to amend produced by plaintiff, we set forth the relevant chronology and factual allegations.

In February 1980, plaintiff filed its initial complaint. In April, in response to a motion to dismiss, plaintiff filed a "motion to amend and clarify plaintiff's complaint." During that summer, plaintiff filed a "reply to defendant's amended motion to dismiss" which, by order of court, was incorporated as part of the complaint. Finally, in November and as a result of a threatened dismissal by the court, plaintiff filed a "motion to amend and consolidate" which, for the first time, fully cited the statutory provisions allegedly violated by defendant.[1]

■ (1) *Sherman Act, § 1, 15 U.S.C. § 1.* Plaintiff's allegations, gleaned from its various pleadings, were vague but may fairly be summarized as follows. The plaintiff was "an Authorized Builder/Dealer of Defendant" engaged, we infer, in the marketing of newly built houses. After four or five years of this relationship, the defendant terminated plaintiff as its "builder/dealer." The termination was alleged to be arbitrary, "anti-competitive" and "not substantiated by any business purpose."

However, no conspiracy or agreement with other persons or entities was pleaded, apart from a vague reference to "inter-family relationships." In fact, plaintiff alleged in one of its early pleadings, never retracted, that "this unilateral action of the defendant was directed specifically at the Plaintiff and not, to the best of Plaintiff's knowledge, directed at any other builder/dealer of said Defendant nor were any lending institutions involved with the Defendant and/or the Defendant's builders/dealers notified or involved of the Defendant's unilateral action." Finally, the only other pleadings relevant to a Sherman Act claim were conclusory allegations of an "internal conspiracy" whereby plaintiff was to be removed from competition with defendant at the "builder/dealer" level, an attempt, we gather, to allege that defendant was vertically integrating its operations.

The Sherman Act, § 1, 15 U.S.C. § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States...." Despite plaintiff's liberal use of terms such as "conspire," it failed to allege facts suggesting that the decision to terminate plaintiff as a dealer was other than an intracorporate one, i.e., a unilateral decision to cease doing business with plaintiff. The pleadings admitted as much. There is no suggestion that the termination was "exercised in furtherance of an unlawful arrangement with others—such as a tie-in arrangement, reciprocal dealing arrangement, market allocation arrangement, or price-fixing plan...." ABA, Antitrust Law Developments 20 (1975) (footnotes and citations omitted). Nor is there any basis for inferring an anticompetitive "conspiracy" emanating from a pattern of "unilateral" steps and pressure tactics employed by defendant. *See United States v. Parke, Davis & Co.,*

---

[*] Senior Circuit Judge of the Third Circuit, sitting by designation.

1. There is no merit to appellant's apparent argument that an August 1980 court order that it file an amended complaint denied with prejudice a pending motion to dismiss. The motion to dismiss was explicitly and properly renewed on October 9, 1980. We are at a loss to understand how plaintiff thinks that it should be both free to file repeated, incoherent pleadings and immune to a motion to dismiss.

362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). Rather, we see no more than "the long recognized right of trader or manufacturer engaged in an entirely private business freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 468, 63 L.Ed. 992 (1919); *cf. Auburn News Co. v. Providence Journal Co.*, 659 F.2d 273, 278 (1st Cir. 1981) (holding vertical integration of newspaper distribution system lawful).

■ (2) *Sherman Act, § 2, 15 U.S.C. § 2.* In addition to the above-summarized facts, plaintiff alleged the following in attempting to plead a violation of § 2.

> That the Plaintiff further alleges that the Defendant has violated Section 2 of the Sherman Act by attempting to establish its own channel of distribution which is monopolistic in nature and intent. The Plaintiff alleges that it is the intent of the Defendant to establish a separate channel of distribution to the detriment other Plaintiff and the Plaintiff's business and states that in establishing said channel of distribution the Defendant did entice and hire away from the Plaintiff some of its sales personnel.

Section 2 of the Sherman Act provides sanctions for "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of [interstate or foreign] trade or commerce . . . ." The Supreme Court has ruled:

> "To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would . . . be necessary to appraise the exclusionary power of the [defendant's conduct] in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure [defendant's] ability to lessen or destroy competition." *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 177, 86 S.Ct. 347, 350, 15 L.Ed.2d 247 (1965).

*See United States v. Grinnell Corp.*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 1703–04, 16 L.Ed.2d 778 (1966). It is necessary for the pleadings, as a threshold matter, to sketch such relevant details of a § 2 claim. *See, e.g., Person v. New York Post Corp.*, 427 F.Supp. 1297, 1308 (E.D.N.Y.), *aff'd mem.*, 573 F.2d 1294 (2d Cir. 1977). Despite ample opportunity to do so, however, plaintiff failed to plead any facts defining the market, as mandated by *Walker Process Equipment, Inc., supra.* Because of this material omission in the pleadings, the basis relied upon by the district court in dismissing, we affirm dismissal of the § 2 claim. *See Americana Industries v. Wometco de Puerto Rico, Inc.*, 556 F.2d 625, 627–28 (1st Cir. 1977); *Granader v. Public Bank*, 417 F.2d 75, 81 (6th Cir. 1969), *cert. denied*, 397 U.S. 1065, 90 S.Ct. 1503, 25 L.Ed.2d 686 (1970); *Walker Distributing Co. v. Lucky Lager Brewing Co.*, 323 F.2d 1, 9 (9th Cir. 1963), *cert. denied*, 385 U.S. 976, 87 S.Ct. 507, 17 L.Ed.2d 438 (1966); *McElhenney Co. v. Western Auto Supply Co.*, 269 F.2d 332, 339 (4th Cir. 1959); *Unibrand Tire & Product Co. v. Armstrong Rubber Co.*, 429 F.Supp. 470, 477 (W.D.N.Y.1977); *compare Walker Process Equipment, Inc., supra*, 382 U.S. at 178, 86 S.Ct. at 351.

■ (3) *Clayton Act, § 3, 15 U.S.C. § 14.* Plaintiff alleged the following:

> That the Defendant did expect their authorized builder/dealers to utilize the Defendant's products in all situations with the customer even though the Defendant did complete directly with the authorized builder/dealers. It is Plaintiff's contention that such an arrangement is in direct violation of Section 3 of the Clayton Act (15 U.S.C.A. § 14) and that such an arrangement was forced upon the Plaintiff by the Defendant and that the Defendant did state in its contract with its authorized builder/dealers and/or the Plaintiff that the Plaintiff must deal in the Defendant's and the Defendant's products alone to the exclusion of competitive products. Further, in support of the violation of Section 3 of the Clayton Act, mentioned heretofore, that the Plaintiff was forced by this violation to establish a separate corporate entity in which to

carry on other business dealings, not directly related to the sale of the Defendant's products; i.e. the building of garages, the "stick building" of homes, and other interior and exterior remodeling performed by the Plaintiff which had no relation or basis upon the Defendant's product. It was the Plaintiff's sincere belief and the Defendant's expectation that the Plaintiff would use its corporate entity for the sole benefit of the Defendant and the sale of the Defendant's products alone.

Section 3 of the Clayton Act, 15 U.S.C. § 14, provides in relevant part:

It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods ... on the condition, agreement or understanding that the lessee or purchaser thereof shall not use or deal in the goods ... of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce.

In the present case, plaintiff adequately pleaded a contract with defendant barring it from purchasing competitors' products. A § 3 violation then hinges on the anti-competitive effect of defendant's conduct, i.e., whether "performance of the contract will foreclose competition in a substantial share of the line of commerce affected." *Tampa Electric Co. v. Nashville Coal Co.,* 365 U.S. 320, 327, 81 S.Ct. 623, 628, 5 L.Ed.2d 580 (1961). Plaintiff's allegations under § 3 of the Clayton Act are as devoid of facts pertaining to this crucial issue as they were with respect to the market definition aspect of the claim under § 2 of the Sherman Act. We are left in the dark as to the economic circumstances of the arrangement, such as defendant's size and the amount of commerce affected. *See Tampa Electric Co., supra.* There is simply no factual basis from which to infer an anti-competitive effect. The district court properly dismissed this claim as well. *See Walker*

*Distributing Co., supra,* 323 F.2d at 9–10; *Giant Paper & Film Corp. v. Albemarle Paper Co.,* 430 F.Supp. 981, 984–85 (S.D.N.Y.1977); *Stokes Equipment Co. v. Otis Elevator Co.,* 340 F.Supp. 937, 940 (D.Md.1972); *cf. Paul M. Harrod Co. v. A.B. Dick Co.,* 204 F.Supp. 580, 584 (N.D.Ohio 1962).

■ (4) *Robinson-Patman Act, 15 U.S.C. § 13.* Under this statute, plaintiff pleaded the following:

That the Defendant did violate the letter and spirit of Section 2 of the Clayton Act, as amended by the Robinson-Patman Act (15 U.S.C.A. § 13), wherein it refused to deal with the Plaintiff and did discriminate against the Plaintiff in its channel of distribution regarding pricing of the products and further discrimination against the Plaintiff in the method in which the Plaintiff would continue to wind up its business relationship with the Defendant.

That the Defendant did violate the said Robinson-Patman Act in its direct refusal to deal with the Plaintiff and in its discriminatory policies against the Plaintiff, such as: the change in Defendant's check acceptance policies applicable only to the Plaintiff; the distribution of leads amongst it[s] authorized builder/dealers; the interfamilial relationships and interferences with customers and customer leads; the Defendant's direct contact with Plaintiff's customers directly and without the knowledge of the Plaintiff; the non-referral to the Plaintiff of Plaintiff's customer calls and/or warranty problems; etc.

The Robinson-Patman Act, provides in relevant part: "It shall be unlawful for any person engaged in commerce ... either directly or indirectly, to discriminate in price between different purchasers of commodities ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with custom-

ers of either of them...." Here the pleadings are so vague and conclusory that we can discern no facts pleading a claim that defendant directly or indirectly discriminated in price.

*Affirmed.*