[No. AO14321. First Dist., Div. One. Sept. 23, 1983.]

G.H.I.I. et al., Plaintiffs and Appellants, v.
MTS, INCORPORATED et al., Defendants and Respondents.

**COUNSEL**

Lawrence Alioto and John F. Shirley for Plaintiffs and Appellants.

Melvin R. Goldman, Jack W. Londen, Morrison & Foerster, Pettit & Martin, Robert L. Maines, G. Christopher Ritter, Samuel Wong, Mitchell, Silberberg & Knupp, Roy L. Shults, Judith N. Levy and Seth H. Katz for Defendants and Respondents.

**OPINION**

**NEWSOM, J.**—The present appeal follows the sustaining without leave to amend of demurrers to 14 causes of action alleging antitrust violations under California state statutes.

Appellants are a closely held corporation doing business as a retail tape and record store under the name of G.H.I.I., its predecessor partnership Gramaphone, and two individuals who own and manage the corporation.

On January 15, 1980, appellants filed a complaint alleging antitrust and unfair business practices against respondents, which are three large retail record enterprises doing business in Northern California: MTS, Incorpo-

rated, which operates Tower Record Stores (hereinafter Tower)[1]; The Record Factory, Inc. (hereinafter Record Factory), operator of the Record Factory Stores; and Integrity Entertainment Corp. (hereinafter Integrity), controlling entity of the Wherehouse Record Stores. Mentioned as coconspirators in the antitrust causes of action, but not sued as defendants, are the seven largest national sellers of records and tapes: C.B.S., Inc.; R.C.A.; Warner (Elektra) Atlantic; Capitol Records, Inc.; Polygram Distribution, Inc.; M.C.A. Distributing Corp.; and A.B.C. Records, Inc.

After demurrers were twice sustained with leave to amend, appellant filed a third amended complaint which is at issue in this appeal.

The third amended complaint (hereinafter the complaint), contains a total of 14 causes of action against the three respondents: Counts 1, 6 and 10 allege Cartwright Act violations (Bus. & Prof. Code, §§ 16720 and 16726); counts 2, 9 and 11 charge respondents with accepting secret rebates (Bus. & Prof. Code, § 17045); counts 3 and 12 accuse Tower and Integrity of practicing "locality discrimination" (Bus. & Prof. Code, § 17040); counts 4, 7 and 13 allege "sales below cost" Bus. & Prof. Code, § 17043); and counts 5, 8 and 14 charge respondents with using "loss leaders" (Bus. & Prof. Code, § 17044).[2]

The Cartwright Act causes of action allege, in summary, the following: because of their prominent position and resulting economic power in the retail market, respondents are able to and have coerced record distributors (the coconspirators) into selling records and tapes to them at reduced subdistributor (rather than retailer) prices, and giving them preferential financing and merchandising terms.[3] Respondents have been able to offer sales and specials on records and tapes as the result of the discriminatory and preferential treatment accorded them by the distributors. They allegedly have "used the advantages thus obtained to drive . . . smaller competitors from the trade and otherwise cause them injury and damages, by selling at levels which . . . competitors cannot meet, including below-cost levels." As a result, competition has been eliminated and appellants have suffered "reduced selling prices and substantial loss of trade and profits."

The causes of action for "secret rebates" include allegations stated in support of the antitrust claims, as well as additional claims that respondents

---

[1] An MTS subsidiary, Tower Enterprises, Inc., was also sued as a defendant and is a respondent to this appeal. For the sake of convenience, opinion will treat MTS, Inc., and Tower Record Enterprises, Inc., as a single respondent, as the parties have done.

[2] Causes of action 1-5 are against Tower, 6-9 against Record Factory, and 10-14 against Integrity.

[3] The complaint adds that Tower threatened to boycott the distributors, and in fact did boycott C.B.S., Inc., until it exacted price concessions from them.

accepted secret and favorable prices, commissions, discounts, financing arrangements and other special terms and services specified in the complaint which were not granted to appellants; and that these secret rebates have resulted in injury to appellants and tend to eliminate competition.

According to the causes of action for "locality discrimination" against Tower and Integrity, those respondents have sold merchandise in the San Francisco area at prices lower than charged in their stores located elsewhere. Such discriminatory pricing, the complaint avers, was practiced with an intent to destroy competition from independent record dealers such as appellant, and has caused appellant significant damages. The cause of action for "locality discrimination" against Integrity also includes an allegation, absent from the claim against Tower, that the difference in prices was not "cost-justified within the meaning of B & P 17041."

The causes of action for "sales below cost" allege that respondents sold merchandise at prices below invoice cost plus respondents' cost of doing business, for the purpose of destroying competition. Appellants further claim damages, in the form of lost customers and profits, from respondents' below-cost sales. The causes of action for "loss leaders" merely add that respondents sold merchandise at less than cost in order to induce the purchase of their merchandise and that the practice diverted trade from appellants.

Respondents demurred to the complaint on grounds, inter alia, that it failed to state facts constituting any causes of action and that the claims based on the Unfair Practices Act are barred by the applicable statute of limitations. The demurrers were sustained on the former ground, and based upon appellants' representation that no further allegations could be added to the complaint, no leave to amend was granted.

Judgment dismissing the complaint was thereupon entered and timely notice of appeal was filed.

We turn first to appellants' argument that its causes of action based upon the Cartwright Act are sufficiently stated in the complaint.

The Cartwright Act is contained in Business and Professions Code section 16700 et seq. Sections 16720 and 16726 generally codify the common law prohibition against restraint of trade. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953].) Thus, an unlawful trust is defined in section 16720 as "a combination of capital, skill or acts by two or more persons" for enumerated purposes which restrain trade. Section 16726 declares that "every [such] trust is

unlawful, against public policy and void." Section 16750, subdivision (a) confers a private right of action for treble damages and attorneys' fees upon "Any person who is injured in his business or property by reason of anything forbidden or declared unlawful by this chapter, . . ."

 The Cartwright Act is patterned after the federal Sherman Antitrust Act (15 U.S.C. § 1 et seq.) and decisions under the latter act are applicable to the former. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.*, *supra*, 4 Cal.3d 842, 852; *Saxer* v. *Philip Morris, Inc.* (1975) 54 Cal.App.3d 7, 19 [126 Cal.Rptr. 327].)

 Recovery is provided under the Cartwright Act "where the activities of a combination result in a restraint of trade." (*Weissensee* v. *Chronicle Publishing Co.* (1976) 59 Cal.App.3d 723, 728 [129 Cal.Rptr. 188].) In order to maintain a cause of action for such combination in restraint of trade, the complaint must allege: The formation and operation of the conspiracy; the illegal acts done pursuant thereto; a purpose to restrain trade; and the damage caused by such acts. (*Jones* v. *H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 119 [81 Cal.Rptr. 592, 460 P.2d 464]; *Saxer* v. *Philip Morris, Inc.*, *supra*, 54 Cal.App.3d 7, 20.)

Our high court demands a "high degree of particularity in the pleading of Cartwright Act violations. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968) 69 Cal.2d 305, 326-328 [70 Cal.Rptr. 849, 444 P.2d 481].)" (*Motors, Inc.* v. *Times Mirror Co.* (1980) 102 Cal.App.3d 735, 742 [162 Cal.Rptr. 543].) Consequently, generalized allegations of civil antitrust violations are usually insufficient (*Chicago Title Ins. Co.* (1968) 69 Cal.2d 305, at p. 317 [70 Cal.Rptr. 849, 444 P.2d 481]) and the unlawful combination or conspiracy must be alleged with specificity. In *Chicago Title Ins. Co.* v. *Great Western Financial Corp.* (1968), *supra*, 69 Cal.2d 305, 316-317, the court noted that " 'contracts, combinations, or conspiracies in restraint of . . . trade or commerce cannot be alleged generally in the words of the statute but . . . facts must be set forth which indicate the existence of such contracts, combinations or conspiracies.' " Thus, general allegations of a conspiracy unaccompanied by a statement of facts constituting the conspiracy and explaining its objectives and impact in restraint of trade will not suffice.[4] (*Id.*, at pp. 317-318; *Bartley* v. *California*

---

[4] Appellants contend that only a general pleading of a conspiracy to restrain trade is required, relying on Business and Professions Code section 16756, which provides: "In any indictment, information or complaint for any offense named in this chapter, it is sufficient to state the purpose or effects of the trust or combination, and that the accused is a member of, acted with, or in pursuance of it, or aided or assisted in carrying out its purposes, without giving its name or description, or how, when and where it was created." But in *Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, *supra*, the California Supreme Court determined that section 16756 does *not* obviate the necessity of a specific allegation of a restraint upon trade in a civil case. (68 Cal.2d at p. 317.)

*Association of Realtors* (1980) 115 Cal.App.3d 930, 935 [173 Cal.Rptr. 284].) Put slightly differently, the lack of factual allegations of specific conduct directed toward furtherance of the conspiracy to eliminate or reduce competition renders the complaint legally insufficient. (*Jones* v. *H. F. Ahmanson & Co., supra,* 1 Cal.3d 93, 119.)

■ At the same time, as with any demurrer, the material allegations of an antitrust cause of action are deemed admitted and assumed to be true (*Saxer* v. *Philip Morris, Inc., supra,* 54 Cal.App.3d 7, 18; *Bondi* v. *Jewels by Edwar, Ltd.* (1968) 267 Cal.App.2d 672, 676 [73 Cal.Rptr. 494]), while the general rule of pleading that a complaint must be given liberal construction in order to achieve substantial justice between the parties is applicable. (*Saxer, supra,* at pp. 18-23.)

Respondents first contend that appellants have failed to satisfactorily allege a *conspiracy* to restrain trade as required by the Cartwright Act, insisting that the complaint presents a case of unilateral action which, reduced to essentials, merely charges that respondents have been able to obtain preferential treatment from distributors because of their strong economic position in the market. Such claims, respondents insist, are not cognizable under the Cartwright Act.

■ The Cartwright Act "prohibits the combination of resources of two or more independent interests for the purpose of restraining commerce and preventing market competition . . . ." (*Lowell* v. *Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13, 23 [144 Cal.Rptr. 664].) Both the Cartwright and Sherman Acts require a showing or allegation of a conspiracy or combination to restrain trade. (*Rutledge* v. *Electric Hose and Rubber Company* (C.D.Cal. 1971) 327 F.Supp. 1267, 1272; *Kolling* v. *Dow Jones & Co.* (1982) 137 Cal.App.3d 709, 721 [187 Cal.Rptr. 797]; *People* v. *Santa Clara Valley Bowling etc. Assn.* (1965) 238 Cal.App.2d 225, 236 [47 Cal.Rptr. 570].)

■ "A conspiracy is a joint undertaking having an unlawful purpose and arising out of agreement. (Standard Oil Co. v. Moore, 251 F.2d 188 (9th Cir. 1957).) It is a combination of two or more persons by concerted action to accomplish a crime or unlawful purpose." (*Rutledge, supra,* at pp. 1273-1274.) ■ And it is well settled that a complaint for antitrust violations which fails to allege such concerted action by separate entities maintaining separate and independent interests is subject to demurrer. (*Webster Cty. Mem. Hosp.* v. *United Mine Wkrs., etc.* (D.C.Cir. 1976) 536 F.2d 419, 420; *Bondi* v. *Jewels by Edwar, Ltd., supra,* 267 Cal.App.2d 672, 678.)

The Cartwright Act causes of action at issue here allege that respondents have, by virtue of large volume purchases and resultant economic leverage,

*coerced* the coconspirators—who are distributors of records and tapes—to sell products to them on favorable terms, including a lower subdistributor price. Appellants add, in the Cartwright Act cause of action against *Tower* only, that the *coconspirators* have "agreed themselves that Tower should have the subdistributor price, although it is not a subdistributor."

█ Two forms of conspiracy may be used to establish a violation of the antitrust laws: a *horizontal* restraint, consisting of a collaboration among competitors; or a *vertical* restraint, based upon an agreement between business entities occupying different levels of the marketing chain. (*Zoslaw* v. *MCA Distributing Corp.* (9th Cir. 1982) 693 F.2d 870, 884, 886; *National Tire Wsle., Inc.* v. *Washington Post Co.* (D.D.C. 1977) 441 F.Supp. 81, 87.) █ In any case, a conspiracy is the gravamen of the complaint (*Dahl, Inc.* v. *Roy Cooper Co.* (9th Cir. 1971) 448 F.2d 17, 19), and it must be stated in more than conclusionary terms (*Gilbuilt Homes, Inc.* v. *Continental Homes, etc.* (1st Cir. 1981) 667 F.2d 209, 210).

As to the "horizontal" conspiracy, alleged only in the Cartwright cause of action against Tower, we agree with respondents that the pleading is inadequate, since, while alleging that Tower is a party to a conspiracy among distributors, no conspiracy among respondents is even charged. The complaint thus fails to state a horizontal price-fixing scheme involving respondents, and we accordingly conclude that the demurrers to the Cartwright causes of action were on that ground properly sustained. (*Zoslaw* v. *MCA Distributing Corp., supra,* 693 F.2d 870, 884; *Proctor* v. *State Farm Mut. Auto. Ins. Co.* (D.C.Cir. 1982) 675 F.2d 308, 327; *National Tire Wsle., Inc.* v. *Washington Post Co., supra,* 441 F.Supp. 81, 87.)

It is otherwise, however, with respect to the "vertical" conspiracy. Here, a conspiracy is claimed to exist between respondents and the coconspirator distributors. According to the complaint, this conspiracy is the product of coercion, economic intimidation, and, in the case of Tower, threats of boycott practiced by respondents. The distributors have allegedly succumbed to this pressure and given respondents favorable treatment; the complaint describes the distributors as unwilling conspirators with respondents in a vertical price-fixing arrangement.

Respondents counter that appellants have merely alleged that certain of the former have demanded favorable price terms from their distributors, and characterize such conduct as lawful unilateral action.

█ It is well settled that the antitrust laws do not preclude a trader from unilaterally determining the parties with whom it will deal and the terms on which it will transact business. (*United States* v. *Colgate & Co.* (1919) 250

U.S. 300, 307 [63 L.Ed. 992, 996, 39 S.Ct. 465, 7 A.L.R. 443]; *Gilbuilt Homes, Inc.* v. *Continental Homes, etc., supra,* 667 F.2d 209, 211; *Quality Auto Body, Inc.* v. *Allstate Ins. Co.* (7th Cir. 1981) 660 F.2d 1195, 1205; *Gaf Corporation* v. *Circle Floor Co.* (S.D.N.Y. 1971) 329 F.Supp. 823, 828.) An antitrust case must be based upon conspiratorial rather than unilateral conduct. (*Dahl, Inc.* v. *Roy Cooper Co., supra,* 448 F.2d 17, 19; *West Texas Utilities Co.* v. *Texas Elec. Service* ((N.D.Texas 1979) 470 F.Supp. 798, 817.) Thus, only *group boycotts* are unlawful under the Sherman and Cartwright Acts. (*Fashion Guild* v. *Trade Comm'n.* (1941) 312 U.S. 457 [85 L.Ed. 949, 61 S.Ct. 703]; *West Texas Utilities Co.* v. *Texas Elec. Service, supra,* at p. 815; *People* v. *Santa Clara Valley Bowling etc. Assn., supra,* 238 Cal.App.2d 225, 236.)

█ It is also established, however, that a necessary "conspiracy" or "combination" cognizable as an antitrust action is formed where a trader uses coercive tactics to impose restraints upon otherwise uncooperative businesses. (*Kolling* v. *Dow Jones & Co., supra,* 137 Cal.App.3d 709, 720; *Reed Brothers, Inc.* v. *Monsanta Company* (8th Cir. 1975) 525 F.2d 486, 495; *Osborn* v. *Sinclair Refining Company* (4th Cir. 1963) 324 F.2d 566, 571-573.) If a "single trader" pressures customers or dealers into pricing arrangements, an unlawful combination is established, irrespective of any monopoly or conspiracy, and despite the recognized right of a trader to determine with whom it will deal. (*Albrecht* v. *Herald Co.* (1968) 390 U.S. 145, 149 [19 L.Ed.2d 998, 1001, 88 S.Ct. 869]; *Kolling* v. *Dow Jones & Co., supra,* at p. 720; *R. E. Spriggs Co.* v. *Adolph Coors Co.* (1979) 94 Cal.App.3d 419, 425 [156 Cal.Rptr. 738].) Accordingly, a boycott by a single trader constitutes concerted activity if it is occasioned by coercion, threats or intimidation and thereby procures the unwilling cooperation of another. (*United States* v. *Parke, Davis & Co.* (1960) 362 U.S. 29 [4 L.Ed.2d 505, 80 S.Ct. 503]; *Bruce Drug, Inc.* v. *Hollister, Inc.* (1st Cir. 1982) 688 F.2d 853, 859; *Vietnamese, etc.* v. *Knights of K. K. K.* (S.D.Texas 1981) 518 F.Supp. 993, 1010.)

Instances of such conduct abound in the case law. Thus, in *United States* v. *New York Great A. & P. Tea Co.* (7th Cir. 1949) 173 F.2d 79, relied upon by appellants, the defendant, A. & P., "used its large buying power to coerce suppliers to sell to it at a lower price than to its competitors on the threat that it would place such suppliers on its private blacklist if they did not conform, . . ." (*Id.,* at p. 82.) The court characterized this conduct as "a boycott and in and of itself is a violation of the Sherman Act." (*Id.,* at p. 87.) And even in the absence of overtly coercive tactics, where undue pressures have been found—as where an oil company threatened lease cancellation unless its dealers switched from plaintiff to a wholesale distributor of the oil company's choice—Sherman Act violations have been found. (*Tire*

*Sales Corp.* v. *Cities Service Oil Co.* (7th Cir. 1980) 637 F.2d 467, 474; see also *FTC* v. *Texaco* (1968) 393 U.S. 223 [21 L.Ed.2d 394, 89 S.Ct. 429]; *Shell Oil Co.* v. *F. T. C.* (5th Cir. 1966) 360 F.2d 470; *Goodyear Tire & Rubber Co.* v. *F. T. C.* (7th Cir. 1964) 331 F.2d 394, 401.)

■ Turning to the specific allegations of the instant complaint,[5] we agree with respondents that the Cartwright Act causes of action against Record Factory and Integrity contain no specific allegations of coercion; rather, it is claimed that these two respondents employed economic leverage to convince distributors to grant them price discounts and other beneficial terms. The lack of any averment of coercion or a combination renders these causes of action defective. (*Zoslaw* v. *MCA Distributing Corp.*, *supra*, 693 F.2d 870, 886-887; *National Tire Wsle., Inc.* v. *Washington Post Co.*, *supra*, 441 F.Supp. 81, 87.)

The proscription against restraint of trade seeks only to assure that the choice of a product has been made freely under competitive conditions rather than in response to anticompetitive factors such as coercion or agreements not to compete. (*Security Fire Door Company* v. *County of Los Angeles* (9th Cir. 1973) 484 F.2d 1028, 1030.) It is often repeated in antitrust cases that the law seeks to " 'protect competition, not competitors; and stiff competition is encouraged, not condemned.' " (*Quality Auto Body, Inc.*, *supra*, 660 F.2d 1195, 1203; *Travelers Ins. Co.* v. *Blue Cross of West Pennsylvania* (3d Cir. 1973) 481 F.2d 80, 84.) Since nothing in the complaint suggests that the distributors' choices to sell to Record Factory and Integrity on favorable terms were made other than in an atmosphere of free competition among traders, no antitrust violation is stated against those respondents. (*Security Fire Door Company*, *supra*, at p. 1031; *National Tire Wsle., Inc.* v. *Washington Post Co.*, *supra*, 441 F.Supp. 81, 87.)

■ But, respecting Tower, the complaint specifically alleges that it has obtained favorable treatment from distributors by "threats, coercion, intimidation and boycott," in addition to the use of its economic power and free market forces. Included in the allegations is a description of such threats and a boycott by Tower. Coercion is thus amply and clearly pleaded against Tower and supports the cause of action for violation of the Cartwright Act. (*Kolling* v. *Dow Jones & Co.*, *supra*, 137 Cal.App.3d 709, 724-725; *Tire Sales Corp.* v. *Cities Service Oil Co.*, *supra*, 637 F.2d 467, 474; *United States* v. *New York Great A. & P. Tea Co.*, *supra*, 173 F.2d 79, 87.)

---

[5]We pause to observe that respondents' reliance on *Zoslaw* v. *MCA Distributing Corp.*, *supra*, 693 F.2d 870 is misplaced for the reason only that that case involved—on similar facts—motions for summary judgment. We are bound here to accept as true the allegations of the complaint.

Tower, however, also argues that the complaint fails to satisfactorily plead any specific acts in furtherance of the conspiracy as required in a Cartwright Act case. (*Saxer* v. *Philip Morris, Inc., supra,* 54 Cal.App.3d 7, 20.) We believe Tower incorrectly reads the pleading. Not only are acts of coercion specified in the first cause of action, but the complaint enumerates benefits which Tower has been able to realize from its favorable position in the market and the concessions granted by distributors, including the ability to undersell competitors and offer specified sales and specials. Acts in furtherance of the vertical restraint are thus properly alleged.

Contrary to respondents' claim, the complaint also sufficiently pleads the requisite intent to restrain trade, and properly alleges legally cognizable damages. An action under the Cartwright Act requires both, together with allegations of serious harmful competitive impact from respondent's unlawful trade practices. (*Jones* v. *H. F. Ahmanson & Co., supra,* 1 Cal.3d 93, 119; *Derish* v. *San Mateo-Burlingame Bd. of Realtors* (1982) 136 Cal.App.3d 534, 542 [186 Cal.Rptr. 390]; *United Multiple Listing Service, Inc.* v. *Bernstein* (1982) 134 Cal.App.3d 486, 489 [184 Cal.Rptr. 465].) The complaint alleges intent to eliminate competition, injury to appellants' business, and harm to the public due to loss of competition. Except for appellants' failure to plead a conspiracy or coercion respecting Record Factory and Integrity, in our view the complaint adequately pleads Cartwright violations.

Appellant next contends that the causes of action for "secret rebates" were properly alleged and sustaining demurrers thereto was error.

Section 17045 of the Business and Professions Code states that "The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful." The provision is part of the Unfair Practices Act, the avowed purpose of which is to encourage competition and safeguard the public against monopolies. (Bus. & Prof. Code, § 17001[6]; *Wholesale T. Dealers* v. *National etc. Co.* (1938) 11 Cal.2d 634, 643 [82 P.2d 3, 118 A.L.R. 486]; *Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 500 [117 Cal.Rptr. 42]; *Kofsky* v. *Smart*

---

[6]Section 17001 states: "The Legislature declares that the purpose of this chapter is to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition, by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed or prevented."

& *Final Iris Co.* (1955) 131 Cal.App.2d 530, 531 [281 P.2d 5].) The provisions of the act "shall be liberally construed that its beneficial purposes may be subserved." (Bus. & Prof. Code, § 17002; *Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc.*, *supra*, at p. 500; *Kofsky* v. *Smart & Final Iris Co.*, *supra*, at p. 531.)

 Respondents maintain that section 17045 only prohibits sellers or distributors from granting a secret rebate or price concession to a buyer; it does not, they suggest, make it unlawful for a purchaser to receive a rebate or other favorable treatment. In brief, respondents' contention is that a cause of action may not be brought against a purchaser under section 17045.

In *Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, *supra*, 69 Cal.2d 305, 323, the California Supreme Court noted that section 17045 is "aimed at preventing a distributor from discriminating between customers . . . ." But given the strong public policy of fostering competition which underlies the act (*Uneedus* v. *California Shoppers, Inc.* (1978) 86 Cal.App.3d 932, 941 [150 Cal.Rptr. 596]), we find no reason to limit the action as suggested by respondents. The purpose of the act is as much contravened by a buyer's receipt of a "secret rebate" as the granting of one by the seller if, as appellants allege here, such a practice is reasonably calculated to eliminate competition. Nor is section 17045 by its terms limited to actions against sellers.

Federal courts, we note, have consistently held that buyers who elicit and receive special allowances from sellers violate section 2(d) of the Robinson-Patman Act (49 Stat. 1527 (1936)), notwithstanding the omission of buyers from the specific coverage of the act. (*R. H. Macy & Co.* v. *F. T. C.* (2d Cir. 1964) 326 F.2d 445, 447-448.) The inclusion of buyers within the scope of the section 2(d) proscriptions is based upon the policy of the Robinson-Patman Act of preventing large traders from using economic leverage to secure favored treatment at the expense of spirited competition. (*Ibid.*) Since the California Unfair Practices Act closely parallels the Robinson-Patman Act, and is based upon the same policy considerations (*Uneedus* v. *California Shoppers, Inc.*, *supra*, 86 Cal.App.3d 932, 937), we think it well serves the general policy of our law to recognize an action against buyers such as respondents under section 17045.

Respondents also argue that the complaint fails to allege the *secret* nature of the rebates and price concessions, or that, in any case, it does so in vague and conclusionary terms. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp.*, *supra*, 69 Cal.2d 305, 324.) We disagree, finding that the section 17045 causes of action adequately specify both the nature of the special and favorable terms upon which respondents purchased records and tapes,

and the invidious treatment accorded appellants. It also expressly charges that the rebates *were* "secret" or unknown to others. And given the nature of the cause of action, it is difficult to conceive how appellants could have pleaded the case with greater specificity.

Respondents argue, finally, that appellants failed to plead that the "secret rebates" were "not extended to all purchasers purchasing *upon like terms and conditions*" (italics added) as section 17045 requires. Respondents submit that appellants' basic dispute is with the *different terms* offered respondents by distributors, and thus necessarily there were no purchases on "like terms and conditions." This contention seems specious, for the complaint specifically alleges that the "rebates were not extended to all purchasers purchasing on like terms and conditions," such as appellants. Moreover, the gravamen of appellants' action is that they were purchasing on like terms and conditions, but for anticompetitive reasons were treated differently by distributors.

We conclude that the causes of action for "secret rebates" under section 17045 are properly stated and that it was error to sustain demurrers thereto.

Appellants also challenge dismissal of the causes of action for "locality discrimination" brought under section 17040 of the Business and Professions Code. Section 17031 of the same code defines locality discrimination as selling or furnishing an article or product at a lower price in one location than in another.[7] (*Harris* v. *Capitol Records etc. Corp.* (1966) 64 Cal.2d 454, 461 [50 Cal.Rptr. 539, 413 P.2d 139].) Significantly, section 17041 of the Business and Professions Code permits such discrimination provided allowances are made for grade, quality, quantity or cost of transportation.[8]

Respondents challenge the cause of action for "locality discrimination" as vague and defective for lack of essential allegations that the price differences cited were not justified by such differences in grade, quality, quantity or cost of transportation. In support of their position, they cite

---

[7]The section in its entirety reads: "Locality discrimination means a discrimination between different sections, communities or cities or portions thereof, or between different locations in such sections, communities, cities or portions thereof in this State, by selling or furnishing an article or product, at a lower price in one section, community or city, or any portion thereof, or in one location in such section, community, or city or any portion thereof, than in another."

[8]Section 17041 provides as follows: "Nothing in this chapter prohibits locality discriminations which make allowances for differences, if any, in the grade, quality or quantity when based and justified in the cost of manufacture, sale or delivery, or the actual cost of transportation from the point of production, if a raw product or commodity, or from the point of manufacture if a manufactured product or commodity, or from the point of shipment to the point of destination."

*Green* v. *Grimes-Stassforth S. Co.* (1940) 39 Cal.App.2d 52 [102 P.2d 452], where the court ruled that a cause of action for "locality discriminations" must contain allegations that price distinctions did not result from differences in grade, quality or quantity as specified in the statute. (*Id.*, at p. 56.) The court explained: "Where a party relies for recovery upon a purely statutory liability it is indispensable that he plead facts demonstrating his right to recover under the statute. The complaint must plead every fact which is essential to the cause of action under the statute. Where a party relies on a statute which contains a limitation in the clause creating and defining the liability, as here, such limitation must be negatived in the complaint. . . . ' "In remedial actions based upon a statute such averments must be made as necessary to prove the case within the statute." . . .' " (*Ibid.*)

Appellants counter that *Green* improperly places the burden of pleading and proving lack of cost justification for price discrimination on the plaintiff, who, prior to discovery, is in no position to make such averments.

While we find *Green* v. *Grimes-Stassforth S. Co., supra,* 39 Cal.App.2d 52, to be consonant with the general rule that facts in support of each of the requirements of a statute upon which a cause of action is based must be pleaded (*Feingold* v. *County of Los Angeles* (1967) 254 Cal.App.2d 622, 625 [62 Cal.Rptr. 396]; *Alexander* v. *Scattergood* (1942) 51 Cal.App.2d 127, 131-132 [124 P.2d 151]), we think that rule only applies to statutes which define the right or liability and also contain the exception in the enabling clause itself. Where the exception is found in a subsequent section of the act, it need not be negatived in the initial pleading. (*People* v. *Pay Less Drug Store* (1944) 25 Cal.2d 108, 114 [153 P.2d 9]; *People* v. *Gordon* (1951) 105 Cal.App.2d 711, 724 [234 P.2d 287].) Such is the case here, where liability for "locality discrimination" is founded upon section 17040, and the exception for differences in grade, quality, quantity or cost of transportation is laid down in a separate section (17041) of the Unfair Practices Act.

Hence, we think *Green* is distinguishable from the present case. When it was decided, the section proscribing locality discrimination itself contained an allowance for the " 'difference, if any, in the grade or quality, quantity or in the actual cost of transportation' " of the commodity. (39 Cal.App.2d at p. 55.) A subsequent amendment to the law separated the clause defining the cause of action and exception now found in section 17041. We therefore conclude that appellants are not required to negative the exception for differences in grade or other enumerated factors found in section 17041, and deem the complaint sufficient to withstand demurrer without such allega-

tions. (*People* v. *Pay Less Drug Store, supra,* at p. 114; *People* v. *Gordon, supra,* at p. 724.)[9]

Respondents further contend that section 17040 confers a right of action for special payments or allowances made by competitors, but not by suppliers or others on different levels of the marketing chain to competitors, as is alleged in the complaint.

In *Harris* v. *Capitol Records, etc. Corp., supra,* 64 Cal.2d 454, our high court determined that sections 17040 and 17031 are "intended to apply only to competition on the same 'level' as the person allegedly creating the locality discrimination (i.e., 'primary' competition), rather than to competition between those who purchase from the alleged discriminator (i.e., 'secondary' competition)." (*Id.,* at p. 460.) The rationale for this limitation, explained the court, is that the prohibition on "locality discrimination" applies only to discrimination actuated by the intent to destroy competition by a dealer who competes with the person creating the discrimination, i.e., the person engaged in the *sale* who discriminates by *selling* at a lower price. In other words, the Legislature did not intend to declare unlawful " '. . . a sale at a lower price in one locality than in another where there was no intent to destroy competition with the person who was making the sale.' " (*Id.,* at pp. 460-461.)

But when the factual context of *Harris* is considered, the case will not support respondents' proffered limitation of the governing statutes. In *Harris,* a retail record store sued *distributors* for selling on a more favorable basis records to a "rack-jobber"—the name in the business for a subdistributor who purchases records from distributors at discount and stacks them in self-service racks in supermarkets or similar retail outlets in which the sale of records is only an incidental item. ▮ Sections 17040 and 17031 were found inapplicable because the plaintiff was suing a noncompetitor, while here, in contrast, appellants and respondents are in fact "primary competitors," and the complaint alleges that sales were made by respondents at different prices in the San Francisco area than in other locations *with* the intent to eliminate competition provided by other retailers such as appellant. We think this is precisely the kind of action contemplated by section 17040 and *Harris,* and it is alleged with ample specificity.

▮ We next turn to those causes of action for "sales below cost," which appellants claim were improperly dismissed.

---

[9]We also think this conclusion achieves a more equitable allocation of the respective burdens of pleading.

Section 17043 makes it unlawful "for any person . . . to sell any article or product at less than the cost thereof to such vendor . . . for the purpose of injuring competitors or destroying competition." Appellants insist that they have sufficiently alleged the elements of a cause of action under section 17043—a sale of a product at less than cost, for the purpose or intent of injuring competitors or eliminating competition (*People* v. *Pay Less Drug Store, supra,* 25 Cal.2d 108, 112; *William Inglis & Sons Bak. Co.* v. *ITT Con. Bak. Co., Inc.* (N.D.Cal. 1975) 389 F.Supp. 1334, 1346)—while respondents claim that neither the elements of cost nor intent are properly pleaded.

California employs a fully allocated cost standard to determine whether a sale has violated section 17043. (*Tri-Q, Inc.* v. *Sta-Hi Corp.* (1965) 63 Cal.2d 199, 205 [45 Cal.Rptr. 878, 404 P.2d 486]; *William Inglis & Sons Bak. Co., supra,* at p. 1346.)[10] Under sections 17026 and 17029 of the Business and Professions Code, cost means invoice cost plus the vendor's full cost of doing business or 6 percent.[11] Thus, to satisfy the pleading requirements of section 17043, the plaintiff must allege defendant's sales price, its cost in the product and its cost of doing business. (*Independent Journal Newspapers* v. *United Western Newspapers, Inc.* (1971) 15 Cal.App.3d 583, 587 [93 Cal.Rptr. 299].) And the various costs must be stated in other than conclusionary terms. (*Chicago Title Ins. Co.* v. *Great Western Financial Corp., supra,* 69 Cal.2d 305, 324.)

While appellants' complaint specifically alleges the price at which respondents sold their products, as well as invoice costs to respondent during the relevant period, it fails to allege a definite cost of doing business—merely asserting on information and belief, based upon appellants' experience, that the prices charged for records and tapes were "below" respondents' stated invoice costs plus the unstated cost of doing business.

Roughly similar allegations were deemed insufficient in *Independent Journal Newspapers, supra,* where the court explained: "Without discovery (see

---

[10]Section 17026 states: "'Cost' as applied to production includes the cost of raw materials, labor and all overhead expenses of the producer. 'Cost' as applied to distribution means the invoice or replacement cost, whichever is lower, of the article or product to the distributor and vendor, plus the cost of doing business by the distributor and vendor and in the absence of proof of cost of doing business a markup of 6 percent on such invoice or replacement cost shall be prima facie proof of such cost of doing business. [¶] Discounts granted for cash payments shall not be used to reduce cost."

[11]Section 17029 states: "'Cost of doing business' or 'overhead expense' means all costs of doing business incurred in the conduct of the business and shall include without limitation the following items of expense: labor (including salaries of executives and officers), rent, interest on borrowed capital, depreciation, selling cost, maintenance of equipment, delivery costs, credit losses, all types of licenses, taxes, insurance and advertising."

§§ 17083-17085) plaintiff could not be expected to know exactly what was defendants' cost of advertising space sold in defendants' weekly newspapers . . . . But, according to plaintiff's first amended complaint, it published several weekly newspapers and through its own cost experience it could have alleged on information and belief a supposed cost figure for such space in defendants' weekly newspaper. . . . [¶] Plaintiff did not do this. This omission prevented it from stating a cause of action under the Unfair Practices Act . . . ." (15 Cal.App.3d at p. 587.)

But we think that under the present circumstances appellants are in a demonstrably poorer position than were the plaintiffs in *Independent Journal Newspapers, supra,* to speculate on a "supposed" cost figure, and that it would serve no useful purpose to require a speculative allegation of cost which adds nothing to the notice given by the pleadings in their present state. Accordingly, we view the present pleadings as sufficient under section 17043 and find error in sustaining the demurrer thereto.

For the same reason, we find adequate the pleading of appellants' causes of action for loss leaders under Business and Professions Code sections 17044 and 17030.[12]

As a separate ground for demurrer, respondents contended below that all of appellants' causes of action brought under the Unfair Practices Act are barred by the applicable statute of limitations. The trial court did not reach this issue, having sustained the demurrers for failure of the complaint to state facts constituting causes of action, but respondents renew this objection to the pleading on appeal.

Since the Unfair Practices Act contains no specific statute of limitations, the general statue of limitations must be consulted. Code of Civil Procedure section 338, subdivision 1 provides a three-year period of limitations for "[A]n action upon a liability, created by statute, *other than a penalty of forfeiture*" while, according to section 340, subdivision (1), "[A]n action upon a statute for a *penalty* or *forfeiture*" must be brought within one year. (Italics added.) The instant complaint was originally filed on January 15,

---

[12]Section 17044 provides that it is "unlawful for any person engaged in business within this state to sell or use any article as a 'loss leader' as defined in Section 17030 of this chapter."

According to section 17030, " 'Loss leader' means any article or product sold at less than cost:

"(a) Where the purpose is to induce, promote or encourage the purchase of other merchandise; or

"(b) Where the effect is a tendency or capacity to mislead or deceive purchasers or prospective purchasers; or

"(c) Where the effect is to divert trade from or otherwise injure competitors."

1980, and alleges unfair business practices on the following dates: by Tower between 1977 and the date the complaint was filed; by Record Factory from 1977 to 1979; and by Integrity between 1977 and 1979, with locality discriminations by Integrity alleged to have occurred in 1980. The timeliness of appellants' Unfair Practices Act claims and the acts for which recovery may be obtained thereunder thus depends upon which period of limitations is applied. And, of course, if the complaint shows on its face that the action is barred by the governing statute of limitations, it is subject to demurrer. (*Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675 [138 Cal.Rptr. 338]; *Greninger* v. *Fischer* (1947) 81 Cal.App.2d 549, 553 [184 P.2d 694].)

Focusing on the nature of the present complaint, we note that the Unfair Practices Act provides for recovery of actual (Bus. & Prof. Code, § 17070) and treble damages (Bus. & Prof. Code, § 17082).[13] An award of treble damages is mandatory under section 17082 if a violation of the Unfair Practices Act is established. (*Uneedus* v. *California Shoppers, Inc., supra,* 86 Cal.App.3d 932, 942.)

 As appellants concede, the settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature (*Helm* v. *Bollman* (1960) 176 Cal.App.2d 838, 843 [1 Cal.Rptr. 723]; *Grossblat* v. *Wright* (1951) 108 Cal.App.2d 475, 485 [239 P.2d 19]), and thus governed by the one-year period of limitations stated in section 340, subdivision (1). (*County of San Diego* v. *Milotz* (1956) 46 Cal.2d 761 [300 P.2d 1]; *Heesy* v. *Vaughn* (1948) 31 Cal.2d 701 [192 P.2d 753]; *Porter* v. *Arthur Murray, Inc.* (1967) 249 Cal.App.2d 410, 423 [57 Cal.Rptr. 554]; *Dept. of Social Welfare* v. *Stauffer* (1943) 56 Cal.App.2d 699 [133 P.2d 692].)

In *Leh* v. *General Petroleum Corporation* (9th Cir. 1964) 330 F.2d 288, the Ninth Circuit held that the one-year statute of limitations stated in section 340, subdivision (1) applied to an action to recover treble damages,

---

[13]Section 17070 provides: "Any person or trade association may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages."

Section 17082 provides in pertinent part: "In any action under this chapter, it is not necessary to allege or prove actual damages or the threat thereof, or actual injury or the threat thereof, to the plaintiff. But, in addition to injunctive relief, any plaintiff in any such action shall be entitled to recover three times the amount of the actual damages, if any, sustained by the plaintiff, as well as three times the actual damages, if any, sustained by any person who has assigned to the plaintiff his claim for damages resulting from a violation of this chapter. . . ."

stating: "'[T]he California Supreme Court has characterized as a penalty "any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him for a legal damage done him by the former." [Miller v. Municipal Court, 22 Cal.2d 818, 837, 142 P.2d 297, 308 (1943); see also Grossblat v. Wright, 108 Cal.App.2d 475, 239 P.2d 19 (1951).] [¶] The conclusion is thus impelled that § 340(1) of the California Code of Civil Procedure, as construed by the California courts, is applicable to treble-damages causes under the Federal antitrust laws which accrued prior to the effective date of the four-year Federal limitations period.'"[14] (*Id.,* at p. 296.)

■ Appellants, however, ask us to apply a two-fold statute of limitations in the present case: the one-year period to the claim for treble damages, and the three-year period to the recovery of actual damages, expressing their willingness to waive any treble damages which accrued beyond the one-year period.

Appellants base their position on the decision of the Ninth Circuit in *Ashland Oil Co. of Cal.* v. *Union Oil Co. of Cal.* (T.E.C.A. 1977) 567 F.2d 984. In *Ashland,* the plaintiff sought recovery of overcharges for petroleum products pursuant to the federal Emergency Petroleum Allocation Act of 1973 (15 U.S.C. § 754(a)(1)), and also asked for treble damages as provided by the statute. Using California law to determine the appropriate statute of limitations, the court concluded that the suit for actual damages was controlled by section 338, subdivision 1 while the accompanying treble damages claim was barred in accordance with section 340, subdivision (1). (*Id.,* at p. 991.) The action for compensation was considered other than "[a]n action upon a statute for a penalty or forfeiture." (*Id.,* at p. 993.)

California case law is consistent. In *Porter* v. *Arthur Murray, Inc., supra,* 249 Cal.App.2d 410, an action for treble damages was dismissed as untimely under section 340, subdivision (1), but plaintiff was allowed to recover for "money had and received." (*Id.,* at p. 424; see also *Stock* v. *Meek* (1950) 35 Cal.2d 809 [221 P.2d 15]; *Beck* v. *Arthur Murray, Inc.* (1966) 245 Cal.App.2d 976 [54 Cal.Rptr. 328]; *United States* v. *Magnolia Motor & Logging Co.* (N.D.Cal. 1962) 208 F.Supp. 63.) And in *Stone* v.

[14]A notable case taking a seemingly contrary view is *Holland* v. *Nelson* (1970) 5 Cal.App.3d 308 [85 Cal.Rptr. 117], where the three-year period of limitations of section 339, subdivision 1 was found applicable to an action for treble damages under the Dance Act (Civ. Code, § 1812.50 et seq.). But in *Holland,* the pertinent statute merely gave the trial court the option of awarding treble damages. Statutory actions providing for *mandatory* recovery of treble damages, as in the case at bench, were specifically distinguished. (*Id.,* at p. 312.) Moreover, *Holland* is contrary to the weight of California authority. (*Ashland Oil Co. of Cal.* v. *Union Oil Co. of Cal.* (T.E.C.A. 1977) 567 F.2d 984, 992-993.)

*James* (1956) 142 Cal.App.2d 738 [299 P.2d 305], the court indicated that a statutory right to recover prepaid finance charges was governed by a two-year statute of limitations, although an action based upon the statute for the entire purchase price was characterized as a penalty and therefore barred by section 340, subdivision (1).[15]

Here, as in *Ashland,* appellant's requests for actual and treble damages are based upon separate statutes contained within the same act. Appellants claim compensatory damages pursuant to section 17070, and request trebling of those damages in accordance with section 17082. Since these claims are patently severable, and the actual damages are not in the nature of a "penalty or forfeiture," we conclude that appellants are entitled to recover all actual damages which accrued within three years of the filing of the complaint, and that all of such damages which accrued within *one* year prior to the filing of the complaint may be trebled under section 17082.[16] (*Ashland, supra,* at p. 933.)

It is necessary to add that the complaint is not, in any event, subject to demurrer for violation of the statute of limitations. ▮▮▮ It is only when a complaint shows on its face that it is *necessarily* barred, rather than possibly, that a demurrer on such grounds will be sustained. (*Greninger* v. *Fischer, supra,* 81 Cal.App.2d 549, 553.) The complaint here alleges unlawful acts and damages in 1979, which, even upon application of the one-year period of limitation, would not be barred. Accordingly, while the statute of limitations may preclude appellant from recovering some damages, it does not provide a reason for sustaining respondents' demurrer.

---

[15]The plaintiff in *Stone* sued under California's Civil Code section 2982, subdivisions (d) and (e). Subdivision (d) of that statute provided that a buyer of a motor vehicle under a conditional sales contract could pay off the entire debt at any time prior to its maturity. In that event the buyer would be entitled to receive a refund credit for any prepaid finance charges less certain adjustments required by the statute. If the seller failed to refund any prepaid finance charges subdivision (e) provided that the buyer could recover the total amount paid under the contract. The court held that subdivisions (d) and (e) of section 2982 were severable. Subdivision (e) was held to provide for a penalty, barred by section 340, subdivision (1). The court did not question that an action to recover prepaid finance charges under subdivision (d) would be governed by the longer period of two years. However, since the complaint was filed more than two years after the sales transaction at issue occurred, a demurrer to the entire action was sustained.

[16]When applying the one and three year periods of limitation for any continuing violations of the Unfair Practice Act, damages accrue from the date they are suffered and certain. (*Zenith Radio Corp.* v. *Hazeltine Research* (1971) 401 U.S. 321, 339 [28 L.Ed.2d 77, 86, 91 S.Ct. 795].) Thus, if respondents are alleged and shown to have committed unlawful acts in 1977 that cause damages in 1979—when appellants went out of business—the latter date is when the applicable period of limitations begins to run. (*Ibid.*)

The judgment is reversed as to causes of action I, II, III, IV, V, VII, VIII, IX, XI, XII, XIII, and XIV; in all other respects the judgment is affirmed.

Elkington, Acting P. J., and Holmdahl, J., concurred.

A petition for a rehearing was denied October 21, 1983, and respondents' petitions for a hearing by the Supreme Court were denied December 28, 1983.