**NATIONAL TIRE WHOLESALE, INC., Plaintiff,**

v.

**The WASHINGTON POST COMPANY, Defendant.**

Civ. A. No. 77–0348.

United States District Court, District of Columbia.

Oct. 28, 1977.

Stuart C. Law, Law & Murphey, Washington, D. C., for plaintiff.

Gary D. Wilson, Wilmer, Cutler & Pickering, Washington, D. C., for defendant.

## MEMORANDUM

GASCH, District Judge.

In this action, plaintiff National Tire Wholesale, Inc. alleges that the advertising practices of defendant The Washington Post Company violate the Robinson-Patman and Sherman Antitrust Acts. In addition, it alleges that these acts constitute a breach of the advertising contract between plaintiff and defendant. This case is now before the Court on defendant's motion for judgment on the pleadings.

*BACKGROUND*

Plaintiff National Tire Wholesale, Inc. (NTW), a retailer of tires and other related automobile accessories and services, brings this action for damages allegedly resulting from the advertising practices of the defendant Washington Post Company (Post). The gravamen of plaintiff's complaint is that the Post has consistently granted NTW's chief competitor, Market Tire Company (Market), preferential advertising positions. Plaintiff claims that the Post has continually refused to afford it "premium paid positions" purportedly on the ground that space was not available, while it has placed ads of its competitor, Market, in premium spots without requiring Market to pay any additional charge. Finally, it alleges that the Post admitted for the first time in September, 1976 that the position of ads was not randomly selected and the Post had and would continue to give Market favored treatment, because it was a preferred customer. Plaintiff asserts that these facts constitute (I) price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. § 13 (1970), (II) a combination in restraint of trade in violation of section 1 of the Sherman Act, 15 U.S.C. § 1 (Supp. V 1975), and (III) a breach of contract.

As a basis for these allegations, plaintiff alleges that newspaper advertising is virtually the only practical advertising medium for plaintiff and its competitors in the retail tire sales business; the Post has a wider circulation than any other newspaper in Washington, D. C.; marketing studies reveal that men are the principal buyers of tires and that a high percentage of men read the Sports Section; the first page of the Sports Section is not available for advertisements, the second and third pages are the most effective spots for advertisement, and the later pages are substantially less valuable. Plaintiff claims that in 1971 it entered into a series of annual written agreements with the Post for advertising space. These agreements provided the Post with discretion to determine the placement of advertisements, except that an advertiser who pays an additional charge for a "premium paid position" may specify the pages on which the advertisement is to appear, if the Post determines that the selected space is available.[1]

Defendant urges dismissal of the entire action. It argues that even assuming the

---

1. Apparently plaintiff relies on this contractual term as a basis for the breach of contract claim. It asserts that the Post has consistently denied it a "premium page position," even though plaintiff indicated it would pay the premium charge and the space was available.

**84**

truth of all allegations in the complaint, Counts I and II fail to state a claim upon which relief can be granted under the Robinson-Patman and Sherman Acts. It further argues that dismissal of these two jurisdiction-conferring claims[2] should lead to dismissal of the pendent breach of contract claim. Thus, defendant urges dismissal of the entire complaint.

## MERITS

A. *Legal Standard for Judgment on the Pleadings.*

■ While courts should exercise caution in granting motions that dispose of the case before trial in complex antitrust actions, *see, e.g., Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.E.2d 458 (1962), such motions are appropriate in antitrust actions when the legal standard applicable to a motion for a judgment on the pleadings is satisfied: Assuming all factual allegations of the nonmoving party to be true, including those specifically denied by the moving party, and drawing all reasonable inferences in favor of the nonmoving party, the nonmoving party fails to state a claim upon which relief may be granted. *See generally* C. Wright & A. Miller, 7 *Federal Practice and Procedure* §§ 1367–69 (1969). As the Supreme Court in *First Nat'l Bank v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968), noted:

> To the extent that petitioner's burden-of-proof argument can be interpreted to suggest that Rule 56(e) should, in effect, be read out of antitrust cases and permit plaintiffs to get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support these allegations, we decline to accept it. While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress

trial notwithstanding the absence of any significant probative evidence tending to support the complaint.

Indeed, both the District of Columbia Circuit and District Courts have recently granted summary judgment in favor of defendants in antitrust cases, where plaintiffs failed to establish an antitrust claim, even taking all plaintiffs' allegations as established. *See Proctor v. State Farm Mutual Automobile Insurance Co.,* 561 F.2d 262 (D.C.Cir.1977); *R. A. Weaver & Assoc., Inc. v. Haas & Haynie Corp,* No. 75–2142 (D.D.C. May 19, 1977).

B. *Robinson-Patman Claim.*

The Robinson-Patman Act provides:

> It shall be unlawful . . . to discriminate in price between different purchasers of *commodities* of like grade and quality, . . . where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition

. . . .

Clayton Act § 2, 15 U.S.C. § 13(a) (1970) (emphasis added). Defendant claims that the Act does not apply to the instant case because newspaper advertising is not a "commodity" within the meaning of the Robinson-Patman Act. Plaintiff contends that while nonprint advertising is not governed by the Act, printed advertising is a tangible product and therefore a commodity under the Robinson-Patman Act.

■ The term "commodity" is commonly defined by courts to include "goods, wares, merchandise, machinery and supplies." *See, e.g., Baum v. Investors Diversified Services, Inc.,* 409 F.2d 872, 875 (7th Cir. 1969); *Columbia Broadcast System, Inc. v. Amana Refrigeration, Inc.,* 295 F.2d 375, 378 (7th Cir. 1961), *cert. denied,* 369 U.S. 812, 82 S.Ct. 689, 7 L.Ed.2d 612 (1962). In other words, "commodity" within the meaning of both the Robinson-Patman Act and section 3 of the Clayton Act is "restricted to products, merchandise, or other tangible goods." *Baum v. Investors Diversified*

---

**2.** Jurisdiction arises under 28 U.S.C. § 1337 (1970), and 28 U.S.C.A. § 1331 (Supp.1977).

*Services, Inc.,* 409 F.2d at 875. Indeed, one of the sponsors of the Act, Representative Patman, has interpreted "commodity" as "used in the commercial sense" and in the "application of the Robinson-Patman Act" to include "any moveable or tangible thing that is produced or used as the subject of barter." W. Patman, *Complete Guide to the Robinson-Patman Act* 33 (1963).

There is little legal authority on the issue whether newspaper advertising is a "commodity" governed by the Robinson-Patman Act. While the Supreme Court explicitly declined to address the issue in *Times-Picayune Publishing Co. v. United States,* 345 U.S. 594, 609–10 n. 27, 73 S.Ct. 872, 97 L.Ed. 1277 (1953), the District Court for the Southern District of New York held that the "Robinson-Patman Act is inapplicable to the sale of advertising by publications." *National Auto Brokers Corp. v. General Mtrs. Corps.,* 1974–2 Trade Cas. 97,856, 97,-858 (S.D.N.Y.1974). The holding applies to trade publications as well as newspapers of general circulation. At least two prominent commentators have adopted this position. Professor Areeda flatly states that "Section 2(a), like Clayton Act § 3, applies only to transactions in "commodities" which are customarily understood to exclude services and such intangibles as newspaper or broadcast advertising," P. Areeda, *Antitrust Analysis* 846 (1974), implying that for purposes of the Robinson-Patman Act, broadcast and newspaper services are indistinguishable. Another commentator maintains that "[w]hat is being sold is in the nature of a service, the circulation of ideas to the newspaper's readers. The printed paper is merely a tangible vehicle for the conveyance of these ideas. It is only incidental to the dominant intangible nature of the transaction." E. Kitner, *A Robinson-Patman Primer* 49 (1970).

■ Although the characterization of newspaper advertising is not clearly established, it is well-settled that broadcast advertising is not included within the term "commodity" under the Robinson-Patman Act. *See Baum v. Investors Diversified Services, Inc., supra; Syracuse Broadcast-*ing Corp. v. Newhouse, 319 F.2d 683 (2d Cir. 1963); *Columbia Broadcasting System, Inc. v. Amana Refrigeration, Inc., supra; cf. Tri-State Broadcasting Co. v. United Press International, Inc.,* 369 F.2d 268 (5th Cir. 1966). This categorization provides support for defendant's position that newspaper advertising is not a "commodity," since newspaper advertising, like broadcast advertising, is essentially an intangible service. *See* E. Kitner, *supra,* at 49. Plaintiff's argument to the contrary, that print advertising may be distinguished from other advertising, because newspaper advertising is a tangible product while radio and television advertising involves a "fleeting visual or auditory image," Plaintiff's Opposition to Defendant's Motion at 2, is unpersuasive. In support, plaintiff cites *United States v. Wichita Publishing Co.,* 1959 Trade Cas. 75,-535, 75,536 (D.Kan.1959), in which a consent decree was entered. However, the court implicitly stated that no issue of law or fact had been adjudicated. The only additional authority upon which plaintiff relies is the fact that the FTC recently filed an action similar to the instant case against the Times-Mirror Co. The FTC complaint alleges that the "volume discount advertising rate structure of the *Los Angeles Times* results in a substantial and systematic discrimination in the price of advertising sold to various customers, in that larger volume advertisers receive more favorable rates than smaller volume advertisers," and violates section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (Supp. V 1975), and the Robinson-Patman Act. *Times Mirror Company,* Docket No. 9103 ¶ 9 (1977). However, the FTC complaint is of little precedential value, as it merely indicates that staff attorneys at the Federal Trade Commission consider newspaper advertising to be a "commodity" within the purview of the Robinson-Patman Act. It in no way represents the view of the Commission on this issue. Moreover, since the complaint does not explicate the basis for this position, it is particularly inappropriate for the Court to defer to the view of the FTC staff attorneys.

In view of the above principles and judicial precedent, the Court concludes that newspaper advertising is not a "commodity" within the meaning of the Robinson-Patman Act. Thus, Count I should be dismissed for failure to state a claim under the Robinson-Patman Act.

### C. *Sherman Act Claim.*

Plaintiff alleges in Count II that "preferential treatment of Market by defendant in the placement of advertising in the Post, along with Market's willing participation in such arrangement, constitutes an illegal combination in restraint of trade." Complaint ¶ 20. Such treatment allegedly violates sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 3 (Supp. V 1975), which declare unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce."

The thrust of plaintiff's complaint is that "plaintiff's advertisements have regularly and consistently been placed in positions less desirable than those of plaintiff's chief competitor, Market Tire Co." Complaint ¶ 12. More specifically, it complains that the Post sold Market advertising space on pages 2 and 3 of the Sports Section without charging it a premium rate, while refusing to sell plaintiff preferred placement on these same pages. As a consequence, plaintiff contends that its public image has not been presented as effectively as otherwise would be possible, and it has lost customers and suffered damages. Complaint ¶ 17. Moreover, "by its avowed policy of favoring Market, the defendant has strengthened Market's dominance in the field and severely reduced the ability of Market's competitors to compete." Plaintiff's Opposition to Defendant's Motion at 5. However, plaintiff neither alleges that the Post has treated it differently than plaintiff's other competitors, except for Market, nor that its advertisements appear less frequently on pages 2 and 3 of the Sports Section than if a "random" system were used for placement of advertisements. There is not a hint of an allegation that Market and plaintiff's other competitors have combined or conspired to request that plaintiff be given an inferior position; there is not even a suggestion that they have communicated with each other.

Plaintiff seems to base its allegation of a violation of section 1 of the Sherman Act on two theories. First, it alleges that defendant and Market Tire have combined to restrain trade. Second, it alleges that the Post, by virtue of its dominant position in the newspaper industry in the Washington, D. C. area and its preferential treatment of Market, has acted as a "bottleneck or barrier to competition." Plaintiff's Opposition to Defendant's Motion at 11. Such a theory implies that the Post, because of its control over unique services, has an obligation to deal with all others in a nondiscriminatory fashion.

Defendant challenges the sufficiency of the complaint for a number of reasons. (1) An allegation simply that a particular agreement restrains trade, which is all that plaintiff alleges, is insufficient to establish an antitrust violation, since some restraint of trade is inherent in all commercial dealings. (2) Plaintiff essentially complains of a unilateral act on the part of the Post; a combination in violation of section 1 has not been established. (3) Differential treatment of one tire company, without any evidence that such treatment is based on predation or anything other than defendant's business judgment, is not an unreasonable restraint of trade, especially where the defendant is not a competitor in the retail market. (4) Defendant distinguishes on two grounds the cases imposing an obligation to deal with others: (i) The Post has not absolutely refused to deal with NTW. (ii) Such cases involve situations where "equivalent brands" were not available; in the instant case, a suitable substitute, for example, the Washington Star, is available. (5) It is impossible, given the nature of the service involved, newspaper advertising, to treat all potential customers absolutely equally. If this Court should require the Post to treat all its customers equally, the Court would involve itself in the complex regulation of many intangible factors.

Furthermore, regulation of the Post, without similarly regulating other newspapers and media, would be inequitable and seriously damaging to the Post.

Plaintiff's allegation of a violation of section 1 fails under any theory. The heart of a violation of section 1 of the Sherman Act is a "combination, contract, or conspiracy in restraint of trade." The focus of this section is thus upon acts of collaboration or behavior establishing a collaboration to restrain trade rather than upon market power, acts that evidence market power, or unilateral acts.

 Plaintiff fails to establish a combination in restraint of trade within the meaning of section 1 of the Sherman Act either on the horizontal or vertical level. In order to establish a horizontal restraint, there must be a collaboration *among competitors. See* P. Areeda, *supra,* at 260. Although the restraint of trade of which plaintiff complains is in the retail tire sales market, plaintiff does not allege a combination among competitors in the retail tire business. In fact, plaintiff has asserted an antitrust claim only against the Post, who is not a competitor in the retail tire market. Moreover, there is no allegation that the Post has an economic interest in that market.

 Similarly, plaintiff's allegations do not fit within the conventional framework of a vertical combination to restrain trade. Vertical restraint cases have for the most part involved price or territorial restraints or other concerted action resulting in an absolute refusal to deal with certain parties or parties who fail to comply with certain conditions. *See, e. g., Albrecht v. The Herald Co.,* 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968); *United States v. Arnold, Schwinn, & Co.,* 388 U.S. 365, 376, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967). Furthermore, the collaboration in vertical restraint cases generally involves some combination of manufacturers, wholesalers, and retailers, *i. e.,* parties in the distribution line. *See, e. g., United States v. Arnold, Schwinn, & Co., supra; Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors, Ltd.,* 416 F.2d 71 (9th Cir. 1969). The instant case does not involve these elements.

A more fundamental failing is that plaintiff does not allege any basis for a vertical combination in violation of section 1. The contract for advertising space between the Post and Market, albeit a combination, is not a combination within the scope of section 1. The contract sets forth the terms of dealing between the parties; plaintiff does not allege that the terms of the contract in any way restrict either party's dealings with others. Plaintiff alleges, however, that an illegal combination can be inferred from the "preferential treatment of Market by defendant in the placement of advertising in the Post along with Market's willing participation." Complaint ¶ 20. Plaintiff's contention that it is only necessary to find that two parties are participants to establish a combination is inaccurate. The case upon which plaintiff relies, *Bowen v. Wohl Shoe Co.,* 389 F.Supp. 572 (S.D.Tex.1975), involved an alleged refusal to deal, a more patent violation of the antitrust laws than is alleged in the present case. Indeed, courts are more willing to infer the existence of a combination to restrain trade in the context of an allegation of a refusal to deal or resale price maintenance or other *per se* violation.[3] *See Albrecht v. Herald Co.,* 390 U.S. at 149, 88 S.Ct. 869; *United States v. Parke, Davis, & Co.,* 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960).

In contrast, the instant case does not involve an absolute refusal to deal. As plaintiff acknowledges in its complaint, plaintiff and defendant have had commercial dealings since 1971. Plaintiff simply complains that it is not obtaining the advertising placement it desires and is being treated differently than its chief competitor, Market.

---

3. Most of the cases that plaintiff cites involve *per se* violations of section 1 of the Sherman Act and are inapposite to the instant case.

The failure to allege a sufficient combination is fatal to plaintiff's complaint. It is therefore unnecessary to consider the unreasonableness of the restraint. Thus, plaintiff's argument that it is inappropriate to resolve this issue on a pretrial motion, since it is a question of fact, is irrelevant.

■ The other basic theory upon which plaintiff apparently relies, although plaintiff fails to articulate it fully or coherently, is that defendant, by virtue of its control over a unique service, newspaper advertising, has an obligation to deal with its customers in a nondiscriminatory fashion. While such an allegation could conceivably constitute a violation of section 2 of the Sherman Act, it fails to state a cause of action under section 1.

■ An obligation to deal with others has been imposed in the context of a section 2 monopolization or attempt to monopolize claim. *See Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). *Otter Tail* may be viewed as imposing upon a monopolist with unique control of a service the duty to deal with others in a nondiscriminatory fashion. However, it clearly would be an undue extension of *Otter Tail* to impose such an obligation upon a nonmonopolist. Indeed, in the absence of an intent to monopolize, a nonmonopolist may unilaterally refuse to deal with others absolutely or upon the terms it specifies. *See Lorain Journal Co. v. United States*, 342 U.S. 143, 155, 72 S.Ct. 181, 96 L.Ed. 162 (1951); *United States v. Colgate & Co.*, 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919).

Plaintiff's claim is without merit, since it has not alleged that defendant has monopolized newspaper advertising services, or that it has attempted or is attempting to monopolize such market in violation of section 2 of the Sherman Act. Plaintiff's statement that a newspaper's practice of providing customers with preferred page placement has been deemed to be a violation of the Sherman Act is inadequate for the same reasons: The cases plaintiff cites in support of this statement are section 2 cases. *See Lorain Journal Co. v. United States, supra; Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 342 F.Supp. 1138 (D.N.D.1972), *aff'd*, 493 F.2d 383 (8th Cir. 1974).

Thus, plaintiff's section 1 claim should be dismissed. First, plaintiff fails to allege a "combination" within the meaning of section 1. Second, the theory from which an obligation to deal in a nondiscriminatory manner is derived arises from section 2 of the Sherman Act rather than section 1. Third, the crux of plaintiff's complaint is that the Post is treating plaintiff differently than its chief competitor, Market, by not allowing plaintiff's advertisement to appear as frequently on pages 2 and 3 of the Sports Section. In fact, plaintiff's allegations fail to establish anything more than a unilateral decision by the Post to allocate its advertising positions in a certain manner. Finally, defendant has not absolutely refused to deal with plaintiff. At the most, construing all allegations most favorably to the plaintiff, defendant has refused to deal with plaintiff in certain circumstances. Even so, the contract between plaintiff and defendant expressly gives the Post authority "to refuse to deal" if no space is available.

## D. *Dismissal of Count III for Lack of Jurisdiction*

Jurisdiction over Count III arises under the doctrine of pendent jurisdiction. Defendant argues that if the jurisdiction-conferring claims are dismissed, the pendent claim, Count III, should be dismissed as well for lack of subject matter jurisdiction. This position is well-supported.

■ Where pendent jurisdiction provides a court with authority to hear a state claim, a court has discretion to dismiss the state claim if the federal claims are dismissed prior to trial. The Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), stated that if "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." While *Gibbs* seems to mandate dismissal, more recent cases indicate that it is rather a matter within the court's discretion. *See Rosado v.*

*Wyman,* 397 U.S. 397, 404–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Houlihan v. Anderson-Stokes, Inc.,* 434 F.Supp. 1324 (D.D.C., 1977). Dismissal of the pendent claim is particularly appropriate here, since it occurs at an early stage of the case before extended discovery has taken place, and it promotes the policy of avoiding needless resolution of state claims in federal courts. *See Houlihan, supra,* 434 F.Supp. at 1330. Since it has dismissed the federal claims, the Court clearly has authority here to dismiss the pendent claim. *See Marshall v. District of Columbia,* 392 F.Supp. 1012, 1018 (D.D.C. 1975).

Thus, the Court concludes that Counts I and II should be dismissed for failure to state a claim under the Robinson-Patman and Sherman Acts. Since the federal claims are dismissed, Count III, the pendent claim, is dismissed for lack of subject matter jurisdiction. The defendant's motion for judgment on the pleadings is granted and the entire complaint is thereby dismissed. .