MARC'S RESTAURANT, INC.,
Plaintiff-Appellant,

v.

CBS, INC., Defendant-Respondent.

No. 52054.

Missouri Court of Appeals,
Eastern District,
Division One.

May 12, 1987.

Paul C. Hetterman, St. Louis, for plaintiff-appellant.

Allen Spencer Boston, Richard A. Wunderlich, St. Louis, for defendant-respondent.

KELLY, Judge.

Appellant-plaintiff, Marc's Restaurant, Inc., appeals from a grant of summary judgment by the circuit court of the City of St. Louis, in favor of respondent-defendant, CBS, Inc. The trial court granted respondent's motion for summary judgment on all three of appellant's claims, alleging breach of contract, prima facie tort, and antitrust violations. We affirm.

This suit arose out of the efforts of Walter Preiss, president of appellant corporation, to purchase a particular type of advertising on KMOX(AM), a radio station owned by respondent. Preiss wanted the late Jack Carney, an announcer employed by KMOX at the time, to deliver "live" testimonial-style commercial announcements promoting Marc's Restaurant.

According to respondent, Carney delivered testimonial commercials for a limited number of businesses. Station policy prevented Carney from promoting more than one of the same type or category of product or business at any given time. To use respondent's example, if Carney was touting a particular brand of coffee, KMOX refrained from selling Carney's services to another coffee manufacturer. Respondent says this was done to protect Carney's credibility, and to avoid audience confusion over similar products.

KMOX required a thirteen-week commitment from advertisers who purchased Carney testimonials. These advertisers had the option to renew for as many subsequent thirteen-week periods as they wished.

Early in 1980 (whether in February or March is disputed but immaterial here), Walter Preiss hired an advertising agency, Western Advertising, to obtain an agreement with KMOX to place testimonial commercials for Marc's Restaurant on the Jack Carney program. According to Preiss's deposition, his agent told him there were no openings on Carney's show, that Marc's had been placed on a waiting list, and that Preiss would have a ten to fourteen week wait.

Preiss testified that he was told (without saying by whom) that two other restaurants were ahead of his on this waiting list. He said that Ron and Shirley's Restaurant, which was owned by his brother, Ronald Preiss, was not one of those restaurants. Walter Preiss also testified that Ronald told him that Ron and Shirley's had been added to the list at a later date. However, KMOX agreed to place Ron and Shirley's on the Carney program in May or June of 1980.[1]

Walter Preiss testified that he contacted Western Advertising for an explanation of why Carney was advertising Ron and Shirley's Restaurant ahead of Marc's. Preiss

---

1. Ronald Preiss stated in his affidavit that he joined the waiting list in January of 1980, that there were two restaurants already on the list, and that neither was Marc's Restaurant. Although a factual dispute clearly exists, its resolution is not material to the outcome.

said that both his agent and a KMOX sales representative, Frank Babcock, informed him that the list which included Marc's Restaurant had been lost. Preiss testified that Babcock told him he could go ahead and advertise at that time, but that KMOX would prefer he wait until the next opening occurred. Preiss agreed to wait.

Both Marc's Restaurant and Ron and Shirley's featured Italian-style food. Respondent says that KMOX management and Carney himself considered the restaurants sufficiently similar to preclude Carney from promoting both simultaneously. Ron and Shirley's continued to renew its contract for Carney testimonials throughout the time in question. Carney never delivered any commercials for Marc's Restaurant.

Walter and Ronald Preiss apparently were on less than brotherly terms during this time. Walter Preiss testified that his brother told him at one point during the Carney dispute that he would do everything he could to see that Walter failed.

KMOX did offer appellant the services of other announcers, who could record testimonial commercials for Marc's Restaurant to run at various times during KMOX's schedule, including the Jack Carney program. Walter Preiss accepted the services of one of these announcers, rejecting others at least in part because they advertised competing restaurants. Appellant also advertised on other radio stations, and in local newspapers and magazines.

Appellant filed suit in August, 1983, alleging (1) that respondent breached a contract with appellant to place testimonial commercials on the Jack Carney show; (2) that respondent committed a prima facie tort against appellant by agreeing with Ronald Preiss to prevent Carney from promoting Marc's Restaurant as long as Ron and Shirley's continued to renew its contract; and (3) that this agreement constituted an agreement, conspiracy or combination in restraint of trade violating Missouri's antitrust statute, § 416.031 RSMo 1986.

Prior to discussing the merits of this appeal, we must resolve respondent's motion to strike appellant's Exhibit "E". Exhibit "E" consists of several tape recordings of telephone conversations between Walter Preiss, his advertising agent William "Clay" Hyland, and former KMOX sales manager Robert Fulstone.

These recordings were never brought before the trial court. Appellant's counsel filed an affidavit before the court below which stated that the tapes existed, and that Hyland and Fulstone made recorded statements that conflicted with their deposition testimony.

 Exhibit "E" may not be included in the record before this court. Rule 81.-14(e) states that "[t]he legal file shall be certified by the clerk of the trial court to consist of true copies of portions of the trial record, proceedings, and evidence previously reduced to writing and filed in the trial court." Documents or other exhibits never presented to or considered by the trial court may not be introduced into the record on appeal. *Castle v. Castle*, 642 S.W.2d 709, 711 n. 1 [1] (Mo.App.1982).

 Appellant claims that the recordings should be admitted because the trial court was aware of their existence and significance. The trial court's mere knowledge that a document or other evidence exists is insufficient, however, to allow introduction of such evidence for the first time on appeal. *Carondelet Savings and Loan Association v. Boyer*, 595 S.W.2d 744 (Mo.App. 1980). The court there admitted an exhibit which had not been introduced into evidence below, but which had been attached to a reply to a motion which was presented to the trial court. However, the court in *Carondelet* refused to admit on appeal other documents which were mentioned before the trial court, but never "identified, offered, or attached to the affidavit as exhibits in support of the motion." *Id.* at 746 [3–5]. Respondent's motion to strike Exhibit "E" from the record is granted.

Summary judgment is appropriate where the pleadings, depositions and affidavits on file show that there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Rule

74.04(c). Appellant contends that the trial court erred in granting summary judgment for respondent on the breach of contract claim, because the question whether the parties intended to form a contract is inherently a factual issue.

Intent to agree is not sufficient in itself to form a contract. The essential elements of a contract are: (1) competent parties; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Bengimina v. Allen*, 375 S.W.2d 199, 202 [1] (Mo. App.1964). Although the first three elements presumably are satisfied here, the facts alleged do not support an inference of mutuality of agreement. As the court in *Bengimina* explained:

> It is essential to a contract that the nature and the extent of the obligations be certain. If an offer is so indefinite as to make it impossible for a court to decide just what it means, and to fix exactly the legal liability of the parties, its acceptance cannot result in an enforceable agreement.

375 S.W.2d at 203 [3, 4].

Appellant claims that its placement on a waiting list formed a contract obligating respondent to provide testimonial advertising by Jack Carney. However, appellant has failed to set forth facts sufficient to show mutuality of agreement. The record reveals a number of characteristics of the waiting list which demonstrate the uncertainty of the link between placement on the list and selection for the Carney program. KMOX's prohibition against Carney's promotion of competing businesses kept an advertiser off the air for as long as the competitor chose to renew its contract. All of the advertisers on the program at any given time could renew indefinitely, preventing any openings from occurring. When a space did become available, KMOX management would select a particular type of business as a replacement. For example, a clothing store which had recently joined the waiting list might go on the air ahead of several restaurants which had been listed for a longer time. KMOX management also attempted to give each of its sales representatives a fair opportunity to place clients on the Carney program. Finally, Carney himself evaluated the product or service before agreeing to promote it.

Appellant claims that Walter Preiss understood from the representations of his own advertising agent that he had entered into a contract with respondent. Assent to contract "may not be found or determined on the undisclosed assumption or secret surmise of either party but must be gathered from the intention of the parties as expressed or manifested from their words and acts." *Revere Copper & Brass, Inc. v. Manufacturers' Metals & Chemicals, Inc.*, 662 S.W.2d 866, 869 [3] (Mo.App.1983) (quoting *Shofler v. Jordan*, 284 S.W.2d 612, 615 [5] (Mo.App.1955)). "Negotiations, proposals and preliminary steps leading up to, but not becoming a part of the actual final agreement, do not constitute the contract." *Kalivas v. Hauck*, 365 Mo. 923, 290 S.W.2d 94, 101 [6] (1956). The only mutual agreement that might be discerned from the record is an agreement that Jack Carney would promote Marc's Restaurant if Ron and Shirley's failed to renew its contract. If such an agreement existed, it was never breached, because Ron and Shirley's contract did not lapse. The trial court correctly granted summary judgment for respondent on the breach of contract claim.

Appellant next argues that respondent and Ronald Preiss tortiously conspired to prevent appellant from obtaining Carney's advertising services. Appellant invokes the doctrine of prima facie tort, first recognized in Missouri in *Porter v. Crawford & Co.*, 611 S.W.2d 265 (Mo.App. 1980). In *Porter*, the court summarized the element of a prima facie tort as: (1) an intentional lawful act by the defendant; (2) an intent to cause injury to the plaintiff; (3) injury to the plaintiff; and (4) an absence of any justification or an insufficient justification for defendant's act. *Id.* at 268 [3]. The burden here was upon appellant to affirmatively plead and prove an absence of justification for respondent's conduct. *Wilt v. Kansas City Area Trans-*

*portation Authority,* 629 S.W.2d 669, 672 [6] (Mo.App.1982). It is the intent to injure and not merely the intent to *act* that must be pleaded and proven. *Id.* [5].

Although appellant alleges an agreement took place between respondent and Ronald Preiss to prevent Jack Carney from promoting Marc's Restaurant, Walter Preiss testified in his deposition that he knew of no such agreement. Appellant would have the court infer an improper agreement based upon Carney's promotion of Ron and Shirley's, but not Marc's, and from the ill-will that existed between the Preiss brothers.

■ A radio station generally may choose among advertisers as a matter of business and editorial discretion. Broadcasters may refuse all political advertising, for example. *See Columbia Broadcasting System, Inc. v. Democratic National Committee,* 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 [19] (1953). Respondent (as we have determined) was under no contractual obligation to place Marc's on the air at any particular time. All appellant has shown is that Ron and Shirley's Restaurant entered into an advertising contract which, according to Walter Preiss's own testimony, brought increased business to Ron and Shirley's. Nothing in the record indicates KMOX did not profit from this business relationship as well.

■ Appellant's allegations that respondent's actions were taken not for a business purpose, but to intentionally injure appellant, are conclusory in nature and without support in the record. Summary judgment in respondent's favor on the prima facie tort claim is appropriate.

Finally, appellant states that respondent agreed or conspired to restrain trade in violation of § 416.031 RSMo 1986. This claim also hinges upon the existence of an agreement to refuse Carney's services to appellant. As already explained, appellant merely extrapolates the existence of an improper agreement from the existence of a facially proper business relationship. Here, however, even if everything alleged by appellant is accepted as true (whether or not supported by the record), respondent's

conduct still would not constitute an antitrust violation.

■ Section 416.141 RSMo 1986 requires that Missouri's antitrust statute be construed in accordance with federal law. Under the Sherman Act, a plaintiff must show (1) an agreement, conspiracy or combination among defendants in restraint of trade; (2) injury to plaintiff's business and property as a direct result; and (3) damages capable of reasonable ascertainment, that are neither speculative nor conjectural. *Wilder Enterprises, Inc. v. Allied Artists Pictures Corp.,* 632 F.2d 1135, 1139 n. 1 [1] (4th Cir.1980).

In order to show an "agreement, combination or conspiracy in restraint of trade," appellant would have to show either collaboration among competitors (horizontal restraint) or some combination in the "line of distribution" that restrained competition (vertical restraint). *National Tire Wholesale, Inc. v. Washington Post Co.,* 441 F.Supp. 81, 87 [5–7] (D.D.C.), *aff'd.,* 595 F.2d 888 (D.C.Cir.1979). Appellant seems to allege the latter type of combination.

Appellant does not allege, however, that respondent's refusal to provide appellant with exactly the advertising it requested was in any way designed to result in monopolization of the advertising market by KMOX, or monopolization of the restaurant market by Ron and Shirley's. In *House of Materials, Inc. v. Simplicity Pattern Co.,* 298 F.2d 867 (2d Cir.1962), the court found no antitrust violation where a manufacturer cancelled a number of terminable-at-will contracts with customers in order to retaliate for the customers' bringing an antitrust suit against the manufacturer. The court held that, absent any attempt to monopolize, the manufacturer's right to choose its customers justified any incidental harm to the former customers caused by termination of the contracts. *Id.* at 871–72.

*National Tire* also supports the conclusion that respondent has not violated the antitrust statute. In that case, a newspaper advertiser challenged the newspaper's refusal to make available preferential ad-

vertising placement. The newspaper gave one of plaintiff's competitors preferential placement, but told plaintiff that the premium space it desired was unavailable. The newspaper did sell plaintiff other advertising space. The court stated that most vertical restraint cases usually involve "price or territorial restraints or other concerted action resulting in an absolute refusal to deal with certain parties or parties who fail to comply with certain conditions. [citations omitted] Furthermore, the collaboration in vertical restraint cases generally involves some combination of manufacturers, wholesalers, and retailers, *i.e.*, parties in the distribution line." 441 F.Supp. at 87 [7]. The court found an insufficient showing of a "combination" in violation of the statute, and therefore deemed it unnecessary to decide whether the restraint involved was unreasonable. *Id.* at 88.

■ Appellant's allegation suffers a similar infirmity. Respondent has not absolutely refused to deal with appellant—it has simply refused to make available the exact type of advertising appellant desired. Appellant makes no allegations of price fixing or territorial restriction. It follows that appellant has failed to allege a sufficient combination to make out a viable antitrust complaint. Respondent properly prevailed on its motion for summary judgment on the antitrust claim.

Appellant has failed to show that a dispute exists as to any material fact underlying any of the counts of its petition. On the basis of the record before the trial court, respondent is entitled to judgment on all three claims as a matter of law.

Affirmed.

CRIST, J., concurs.

SATZ, P.J., concurs in result.