Curtis E. OLSON and Melveta L. Olson, Appellants,

v.

CHRISTIAN COUNTY, Missouri, acting through The Christian County Planning and Zoning Commission, Respondent.

No. 21383.

Missouri Court of Appeals, Southern District.

Aug. 26, 1997.

Rehearing Denied Sept. 11, 1997.

---

**5.** All rule references are to Missouri Court Rules (1997), unless otherwise indicated.

Curtis E. Olson, Melveta L. Olson, pro se.

Mark E. Orr, Ozark, for respondent.

Before GARRISON, P.J., and PREWITT and CROW, JJ.

PER CURIAM.

This is a zoning dispute.

Plaintiffs, Curtis E. Olson and Melveta L. Olson, filed a petition against Defendant, Christian County, Missouri, praying the trial court to declare that Defendant's "Unified Development Codes," which took effect February 1, 1993, did not apply to an "existing residential development" owned by Plaintiffs.

The gist of the dispute, as revealed by the record, is that prior to the effective date of the Codes, Plaintiffs owned a parcel of land on which they resided in a mobile home. After the effective date of the Codes, Plaintiffs placed a second mobile home on the parcel, contrary to the Codes. Plaintiffs' petition averred the Codes did not bar them from doing so because their "residential development was in existence prior to the enactment of the . . . codes."

Following a non-jury trial, the trial court entered judgment declaring that because there was only one mobile home on Plaintiffs' land when the Codes took effect, Plaintiffs are not allowed to have a second one there without a permit.

Plaintiffs bring this appeal from that judgment.

Plaintiffs were represented by counsel in the trial court; however, they appear pro se in this appeal.

Plaintiffs' brief evinces an unfamiliarity with the rules of appellate procedure and a misconception of the role of an appellate court.

First, contrary to Rule 84.04(a)(1) and (b),[1] the jurisdictional statement in Plaintiffs' brief sets forth a garrulous history of the dispute, accuses public officials of misconduct, recounts events as to which this court finds no evidence in the record, and refers to exhibits which are not shown by the record to have been received in evidence at trial.

■ An appellate court considers only the record made in the trial court. *Hubbs v. Hubbs*, 870 S.W.2d 901, 906[4] (Mo.App. S.D. 1994). Evidence outside the trial court record is not considered on appeal. *State ex rel. Division of Family Services v. Brown*, 897 S.W.2d 154, 159[10] (Mo.App. S.D.1995). Documents or other exhibits never presented to or considered by the trial court may not be introduced into the record on appeal. *Marc's Restaurant, Inc. v. CBS, Inc.*, 730 S.W.2d 582, 584[2] (Mo.App. E.D.1987).

A second place where Plaintiffs' brief manifests an unfamiliarity with the rules governing appeals is the statement of facts.

■ The primary purpose of the statement of facts in an appellant's brief is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case. *Walker v. Skaggs Community Hospital*, 935 S.W.2d 370, 372[3] (Mo.App. S.D. 1996).

The statement of facts in Plaintiffs' brief accuses public officials of misconduct and describes events as to which this court finds no evidence in the record. Additionally, the statement of facts includes complaints about lawyers who represented Plaintiffs in the past, and also sets forth legal argument. Finally, contrary to Rule 84.04(h), the statement of facts does not have a specific page

reference to the legal file or the transcript where each fact can be verified.

■ The flaws in Plaintiffs' brief enumerated so far—there are others, identified later—justify dismissal of the appeal. *Hansen v. Missouri Real Estate Appraisers Commission*, 875 S.W.2d 620 (Mo.App. S.D.1994); *Vodicka v. Upjohn Co.*, 869 S.W.2d 258 (Mo. App. S.D.1994). However, this court will not impose that sanction, but will instead endeavor to extract enough facts from the record to enable the court to comprehend (if possible) the contentions on which Plaintiffs rely in seeking reversal of the judgment.

This court gleans from the record that the dispute arose after Plaintiffs placed the second mobile home on their land. A letter to Plaintiffs from an official of the "Christian County Planning & Zoning Department" indicates the Department informed Plaintiffs that the second mobile home violated the Codes, and that in order to comply with the Codes, Plaintiffs had to obtain a "Conditional Use Permit."

On October 8, 1993, Plaintiffs submitted an application to the Christian County Planning and Zoning Commission for a "Division III Permit." The application showed the "Existing Land Use" as "single family residential"; it showed the "Proposed Land Use" as "2nd dwelling on property."

The Planning and Zoning Commission considered the application at a meeting November 1, 1993. The minutes of that meeting state, *inter alia:*

"It was decided that the main issue to be determined was whether or not the Olson's [sic] move of a second trailer onto their property should be grandfathered in or a Conditional Use permit be considered. Mr. & Mrs. Olson presented Electric bills showing that they had been paying for 2 meters since 1991. Although the second trailer had not been moved in, they had planned, from the time that they moved their trailer onto this property, to move a second trailer in for their daughter. After P & Z Commissioners directed questions to the Olson's [sic] and a couple of people voiced their objections, Ken Huff made the

---

1. Rule references are to Missouri Rules of Civil Procedure (1997).

motion that we consider the use grandfathered in. Al Berry seconded the motion and it carried unanimously. Curtis and Melveta Olson's [sic] intent of moving a second trailer onto their property was grandfathered in and allowed."

The next pertinent event was a meeting of the Christian County Board of Adjustment on March 1, 1994. The minutes of the meeting state, in pertinent part:

" . . . Chairperson Robert Neal asked Christopher Coulter[2] to review the appeal made by Gary Brown and give a summation of the Planning and Zoning Commission's meeting on November 1, 1993 when the decision to grandfather a second mobile home on the Olson's [sic] property was made.

Gary Brown spoke first for the opposition since he filed the appeal. . . . He talked about how the original hearing at the Planning and Zoning Commission meeting was for a conditional Use Permit and not a grandfathering, how this decision of allowing this site to be grandfathered may effect [sic] other properties and how it may effect [sic] planning and zoning in Christian County.

Mrs. Olson spoke for the defense. . . . She started her arguments by stating that Mr. Brown had no right to appeal her case since he was a criminal and that he abuses his dogs and his family. Since the Planning and Zoning Commission made a decision, he did not have the right to appeal. . . . She said that she bought the land she now owns, the two (2) acres, because her realtor told her she would be able to have two homes on the site. Since this was an existing development she should be grandfathered.

She continued by saying the Planning and Zoning Office pressured her into applying for a conditional use permit and the office had sent her threatening letters. She then stated she did not need a conditional use permit since there was no hardship. She wanted the mobile home on the property so her daughter could live close to her and her husband and play with their grandchildren. . . .

A question was asked by the Board of Adjustment of when the second mobile home was placed on the property. She answered after February 1, 1993.

Dean Saxton asked the question why she wanted the site grandfathered. Mrs. Olson stated there was no hardship and there is no conditional use permit needed.

Jim Johnston asked Mrs. Olson if they added the second mobile home without a permit, Mrs. Olson replied Yes. . . .

Terry Bohmont asked what transpired at the Planning and Zoning meeting and how this became switched around. Staff answered accordingly.

. . . .

After discussion has died down, Jim Johnston remarked about RSMo. 64.600.2[sic] and explained how he saw the situation and mentioned how no hardship was present. Mr. Johnston made a motion to change the wording of the ballot. He stated what should be struck from the ballot. This motion was seconded by Dean Saxton. The motion carried.

. . . .

The ballot was then read and the Board of Adjustment voted. The vote was four (4) YES, zero (0) NO, and one (1) ABSTAIN. The Planning and Zoning Commission's decision was overturned."

The next pertinent event was another meeting of the Board of Adjustment on May 3, 1994. The minutes of that meeting state, in pertinent part:

"First on the agenda was the appeal by Curtis and Melveeta [sic] Olson. Before this case was started, Chairman Robert Neal ask the Olson's [sic] if they would like to table the issue until another time so they may retain legal representation. Melveta Olson denied this request. At this time, Mr. Olson gave a short speech about how they are grandfathered as an existing development and cited page 10, paragraph 7 of the Unified Development Codes for

---

**2.** A document in the record identifies Coulter as "Planning & Zoning Administrator."

Christian County.[3]

There was brief discussion about if there is sufficient new evidence to rehear the case. The Board felt that there was not any new evidence to rehear the case. dean [sic] Saxton made the motion not the [sic] rehear the issue and made it clear to the applicants that if they wish to ask for a grandfathering they will need to go the Planning and Zoning Commission. Jim Johnston seconded the motion. The motion carried."

After that meeting, Plaintiffs filed another application with the Planning and Zoning Commission. A handwritten notation on the application shows Plaintiffs were "applying for Grand Fathering."

The next pertinent event was a meeting of the Planning and Zoning Commission on June 6, 1994. The minutes of that meeting state, in pertinent part:

" ... Chairman Scott opened the permit hearing for Curtis and Melveta Olson to grandfather a second mobile home on their property.... Chris Coulter, P & Z Administrator presented all of the information on the permit application. Ron Elkins made the motion, that since the Board of Adjustment had overturned our original decision to grandfather the property and had refused to rehear it, that we not rehear this permit. Mark Kirby seconded the motion. Chairman Scott asked Chris some questions during which Mrs. Olson kept interrupting. Chairman Scott told Mrs. Olson that she would have a chance to speak when he was finished. During the heated discussion that followed Mrs. Olson continually called Chris Coulter a liar and that she and Mr. Olson had been told by the Board of Adjustment to come back to us. It was determined that the Board of Adjustment had overturned our original decision because the hearing had

**3.** According to a document in the record, paragraph 7 on page 10 of the Codes reads:

"*Existing Developments* All developments, including platted subdivisions, existing upon adoption of this document may continue without a permit until the use is expanded or altered."

**4.** Section 64.660.2 reads, in pertinent part:

been advertised as a conditional use permit hearing and that there were a number of other properties in the county that had multiple electrical meters on them and that the property owners could come back at any time and say that they had planned to put whatever they pleased on the property and we would not be able to stop them. Mrs. Olson said that they had felt from the beginning that they were grandfathered, but that Chris had told her that they were not and she said that Chris convinced her that they should apply for a conditional use permit. She also said that that was the reason that the original hearing had gotten turned around and they had been grandfathered.... Mrs. Olson told us that they did not need a conditional use permit because her daughter was working everyday.... She also stated that they never had planned for her to live in the trailer forever.

Ron Elkins called for a vote. The vote was taken with the motion carrying unanimously. Chairman Scott informed Mr. and Mrs. Olson that their only recourse was to take it to court."

Plaintiffs commenced this suit sixteen months later, on October 6, 1995. As reported in the second paragraph of this opinion, their petition pled that inasmuch as their "residential development" was in existence prior to the effective date of the Codes, the Codes "are not applicable nor enforceable as to them or their property."

Defendant moved the trial court to dismiss the suit on the ground that the court lacked subject matter jurisdiction because "the issues presented in this case have already been decided by the Christian County Board of Zoning Adjustment," and the time for appeal of that decision had passed. Defendant's motion cited § 64.660.2, RSMo 1994.[4]

" ... Any owners ... of buildings, structures or land jointly or severally aggrieved by any decision of the board of adjustment ... may present to the circuit court of the county in which the property affected is located, a petition ... stating that the decision is illegal in whole or in part, specifying the grounds of the illegality and asking for relief therefrom. Upon the presentation of the petition the court

At the start of the trial, the trial court ruled that the motion to dismiss would be taken with the case.

Plaintiffs presented evidence of preparations they had made—prior to the effective date of the Codes—for their land to accommodate two mobile homes. Those preparations included a second electric meter, trenching for water and sewer lines, a new well pump, and a driveway. However, Plaintiff Melveta Olson (the only witness for Plaintiffs) admitted there was only one mobile home (the one in which Plaintiffs resided) on Plaintiffs' land when the Codes took effect.

The trial court held:

"The Court ... overrules the Defendant's Motion to Dismiss and finds and determines that Plaintiffs are not permitted to occupy a second mobile home on the tract without the issuance of a permit therefor.

The Court finds that Plaintiff[s] did have an existing development when the applicable provisions of the zoning and planning regulations became effective. The existing development as defined by the regulations was the tract of land on which they then occupied a mobile home. There was only one mobile home on the tract at the applicable time for determining the existence of an 'existing development' for the purpose of the grandfathering provision.

The grandfathering provisions of the regulations permitting an existing development to continue excludes the expansion or alteration of the existing development without a permit. The occupying of a second mobile home on the same tract of land is an alteration or expansion requiring a permit. There is no right to the permit simply because a part of the tract is being used as an existing development. Preparations for the placement and occupying of a second mobile home on the tract were not completed to an extent that such a use was existing at the time the applicable zoning and planning regulation became effective."

shall allow a writ of certiorari directed to the board of adjustment ... of the action taken and data and records acted upon, and may appoint a referee to take additional evidence in

In a segment of Plaintiffs' brief denominated "Points Relied On," this court finds what appears to be the claim of error on which Plaintiffs rely in seeking reversal of the judgment. This court quotes the averment hereunder, excluding portions which accuse certain public officials of misconduct and portions which do not identify any alleged trial court error. The excluded portions are wholly irrelevant to a determination of whether the trial court erred in its adjudication of Plaintiffs' petition. Plaintiffs assert:

"Actually we feel that nothing should go beyound [sic] 11–1–93—planning and zoning grandfathered us.

every thing after that is actual fraud

. . . .

The board of adjustment did not take our grandfather away—we have the letter from one. and one admited [sic] in our presents [sic] he did not know we were grandfathered when he voted. Melveta Olson called all four and they all said no. they did not take our grandfather away...."

The above averment violates Rule 84.04(d) in that it fails to state wherein and why the trial court's ruling was erroneous. *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978). However, this court infers that Plaintiffs' theory of error is that the decision of the Planning and Zoning Commission on November 1, 1993, i.e., that Plaintiffs' intent to place a second mobile home on their land was "grandfathered in and allowed," was never abrogated by the Board of Adjustment, hence the Commission's decision became a vested right which the trial court was powerless to nullify in this suit.

Plaintiffs cite no authority in support of the above premise.

If a claim of error is one for which precedent is appropriate and available, it is the appellant's obligation to cite relevant authority. *Jordan v. Stallings*, 911 S.W.2d 653,

the case. The court may reverse or affirm or may modify the decision brought up for review...."

660[14] (Mo.App. S.D.1995). If no relevant authority is available, the appellant should so state, with an explanation of why citations are unavailable. *Id.* at [15]. Plaintiffs' brief makes no explanation for citing no authority. Consequently, this court may consider the point abandoned. *Sisk v. McIlroy and Associates,* 934 S.W.2d 567, 573[8] (Mo.App. S.D. 1996).

∎ In saying that, this court is mindful, as noted earlier in this opinion, that Plaintiffs are not represented by counsel. This court is likewise aware, however, that parties representing themselves are bound by the same rules as parties represented by counsel. *Williams v. Shelter Insurance Co.,* 819 S.W.2d 781, 782[2] (Mo.App. S.D.1991). Consequently, Plaintiffs' pro se status does not excuse their failure to cite authority or their failure to demonstrate that none was available.

In addition to the deficiencies identified above, there is another reason Plaintiffs cannot prevail on their claim of error.

At the end of the trial, the trial court granted the parties time to file suggestions. The first issue addressed in Plaintiffs' suggestions was Defendant's hypothesis that the trial court lacked subject matter jurisdiction because Plaintiffs did not timely seek judicial review of the decision of the Board of Adjustment which "overturned" the decision of the Planning and Zoning Commission. Plaintiffs' suggestions argued that the Codes provided no administrative procedure to determine what constitutes an "existing development" as defined by the Codes.[5] Consequently, proclaimed Plaintiffs' suggestions:

"[I]t is the Plaintiffs' position that everything done by the ... Planning and Zoning Commission and the ... Board of Adjustment was void *ab initio* since neither entity had any authority nor jurisdiction whatsoever to make a determination as to whether or not the Plaintiffs were the owners of 'an existing development', or had been 'grandfathered in' since the codes are devoid of any type of procedures wherein

either body can make determinations of this nature." [Emphasis in original.]

The above contention—a claim that all proceedings of the Planning and Zoning Commission and the Board of Adjustment were void *ab initio*—is directly contrary to the position Plaintiffs take in this appeal. As this court understands Plaintiffs, they now maintain that the decision of the Planning and Zoning Commission on November 1, 1993 (which declared that Plaintiffs' intent to move a second trailer onto their land "was grandfathered in and allowed") remained in force from that time forward and barred the trial court from ruling against them.

∎ On appeal, a party is bound by the position he (or she) took in the trial court and will not be heard on a different theory. *Scott v. Edwards Transportation Co.,* 889 S.W.2d 144, 147[4] (Mo.App. S.D.1994). Accordingly, this court holds Plaintiffs' claim of error is ineligible for consideration in this appeal.

Superficially, that holding appears to resolve this appeal. However, there is another issue.

∎ Defendant maintains in this court, as it did in the trial court, that the trial court lacked subject matter jurisdiction because the issues presented in this case had already been decided by the Board of Adjustment, and the time for an appeal from the Board's decision had passed. Defendant cites authority for the proposition that when an administrative remedy is available for resolving a zoning dispute, a party must exhaust that remedy (including judicial review), and a party who bypasses the remedy cannot thereafter challenge the administrative decision by filing suit for a declaratory judgment.

∎ This court agrees with that proposition as an abstract statement of law. However, as reported earlier, Plaintiffs argued in the trial court that the Codes provided no administrative procedure to determine what constitutes an "existing development" within the meaning of the Codes.

This court has studied Defendant's suggestions filed in the trial court in response to Plaintiffs' suggestions, and has found no reference in Defendant's suggestions to any

---

**5.** Footnote 3, *supra.*

provision in the Codes establishing an administrative procedure for resolving a dispute such as the one here. This court has likewise studied Defendant's brief and has found no reference to any such procedure.[6]

Furthermore the records of the proceedings of the Planning and Zoning Commission and the Board of Adjustment reveal some incertitude in the handling of this dispute.

Plaintiffs' initial application to the Planning and Zoning Commission was for a conditional use permit, although Plaintiffs insist they wanted a determination that the use of their land as a site for two mobile homes was "grandfathered in" as an existing residential development. Although the public was apparently notified that the issue before the Commission was whether to grant Plaintiffs a conditional use permit, the Commission ruled that placing a second trailer on Plaintiffs' land was "grandfathered in and allowed."

Upon review, the Board of Adjustment recognized the irregularity in the Planning and Zoning Commission proceeding, and "overturned" the Commission's decision. Upon reconsideration (evidently at the request of Plaintiffs), the Board made it clear that if Plaintiffs wanted to pursue their request for "grandfathering," they should apply anew to the Commission.

Plaintiffs thereupon filed a new application with the Commission, bearing the notation that Plaintiffs were "applying for Grand Fathering."

At its meeting June 6, 1994, the Commission neither granted nor denied that application. The Commission simply refused to "rehear" it.

Thus, Plaintiffs never received a final administrative determination on whether the use of their land as a site for two mobile homes had been "grandfathered in" as an existing residential development. What steps Plaintiffs might have taken to compel the Planning and Zoning Commission to decide the issue on the merits (if the Commission had such authority) is a subject this court need not address.

For the reasons above, this court finds the record insufficient to support a holding that Plaintiffs' failure to exhaust their administrative remedy divested the trial court of subject matter jurisdiction over this dispute. Whether Defendant could have prevailed on that theory with a more complete record is a subject about which this court declines to speculate.

[redacted] One final item deserves mention. The trial court held that inasmuch as Plaintiffs had only one mobile home on their land when the Codes took effect, they cannot expand or alter that use by placing another one there (unless they receive a permit). A case cited by Defendant, *In re Coleman Highlands*, 777 S.W.2d 621 (Mo.App. W.D.1989), demonstrates the trial court correctly applied the law.

Judgment affirmed.

[redacted]

6. The record on appeal indicates a copy of the Codes was received in evidence at trial, but neither side has filed that document with this court. Consequently, this court cannot determine for itself whether the Codes provide such a procedure.