Robert L. DAVIS and Joseph D. Hom, individually and on behalf of all others similarly situated, Plaintiffs,

v.

PACIFIC BELL, Defendant.

Orlando Arce and Arce Enterprises, LLC, dba "Jet International Travel," individually and on behalf of others similarly situated, Plaintiffs,

v.

Pacific Bell, Defendant.

Nos. C 01–2680 SI, C 01–0585 SI.

United States District Court,
N.D. California.

Jan. 10, 2002.

Robert C. Schubert, Willem F. Jonck-heer, Juden Justice Reed, Schubert & Reed LLP, San Francisco, CA, Burton H. Finkelstein, Douglas G. Thompson, Roy A. KAtriel, Finkelstein, Thompson & Loughran, Duvall Foundry, Washington, DC, Nicholas E. Chimicles, Chimicles & Tikellis LLP, Haverford, PA, J. Dennis Faucher, Miller Faucher and Cafferty, Philadelphia, PA, Lawrence A. Sucharow, Goodkind, Labaton, Rudoff & Sucharow LLP, New York City, for plaintiffs.

Robert A. Mittelstaedt, Pillsbury Win-throp LLP, San Francisco, CA, Bobby C. Lawyer, Pacific Telesis Group, Legal Dept., San Francisco, CA, Andrew J. Ogil-vie, Kemnitzer, Anderson, Barron & Ogil-vie, San Francisco, CA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFEN-DANT'S MOTION TO DISMISS

ILLSTON, District Judge.

On October 26, 2001, the Court heard argument on defendant's motion to dismiss plaintiffs' complaint in this consolidated ac-tion. Having carefully considered the ar-guments of the parties and the papers submitted, the Court GRANTS in part and DENIES in part defendants' motion as set forth below.

## BACKGROUND

On January 12, 2001, plaintiffs Robert Davis and Joseph Hom filed a complaint against Pacific Bell Telephone Company ("Pacific") alleging that by obstructing cus-tomer migration to competitors in contra-vention of the Telecommunications Act of 1996, Pacific had violated of the Sherman Antitrust Act, 15 U.S.C. § 2, and the cor-responding state law, the Cartwright Act, Cal. Bus. & Prof.Code § 16700 et. seq. On January 23, 2001, the case was related to another action before Judge Charles A. Legge, *Caltech Int'l Teleco v. Pacific Bell* (C 97–2105 CAL). *Caltech* was an anti-trust action brought by a competitor phone company against Pacific Bell, alleging the same conduct at issue in the instant case. On December 14, 2000, a jury had entered a verdict in Caltech's favor. Following negotiation between the parties, the jury's verdict was vacated on January 22, 2001. On May 15, 2001, this case was consolidat-ed with *Arce v. Pacific Bell* (C 01–0585 CAL).

Plaintiffs filed a consolidated amended class action complaint ("complaint") on May 8, 2001 on behalf of individual and business users of local telephone service in the regions of California in which Pacific is the incumbent local exchange carrier ("ILEC"). *See* Complaint, ¶ 46. The com-plaint concerns Pacific's conduct in the wake of the Telecommunications Act of 1996 ("the Act"), adopted to increase com-petition in the telecommunications indus-try. *See id.,* ¶¶ 12–14. The Act requires ILECs to enter into interconnection agree-ments with would-be competitor providers of local service. Under the agreements, Pacific must sell local exchange services to the competitors who then resell those ser-vices to consumers. *See id.* at ¶ 15. No additional physical connections are built; instead, CLCs conduct their business along Pacific's existing lines. *See id.* at ¶ 16. Customers electing to switch to a competitive local carrier ("CLC") are known as "migrating customers." *See id.*

Plaintiffs allege that since 1996, competi-tors have attempted to provide competing

local phone service to consumers. *See id.* at ¶ 18. According to plaintiffs, Pacific set up and abided by its interconnection agreements at first, but once Pacific began losing market share to its competitors, it began a series of practices aimed at thwarting customer migration. *See id.* at ¶¶ 19–21. Plaintiffs allege Pacific interrupted and disconnected service to migrating customers and misled customers as the "efficacy and legality of the CLCs." *See id.* at ¶ 20. Plaintiffs also allege that Pacific delayed its handling of customer migration, causing a backlog of orders. *See id.* at ¶¶ 22–23. As a result, claim plaintiffs, consumers have effectively been denied a choice of local carriers and consequently must pay supracompetitive rates for local telephone service. *See id.* at ¶¶ 25–27.

Plaintiffs bring causes of action for monopolization and attempted monopolization under the Sherman Act. *See id.* at ¶¶ 53–66. In addition, they allege monopolization and attempt under a theory of "essential facilities" and refusal to deal. *See id.* at ¶¶ 67–81. Plaintiffs also allege a cause of action under California's Cartwright Act. *See id.* at ¶¶ 82–84. Defendant moves to dismiss, alleging that plaintiffs, as consumers, lack standing to sue. *See* Defendant's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Mot. to Dismiss"), 3–6. Defendant further asserts that plaintiffs fail to state a claim for monopolization. *See id.* at 6–14. Finally, defendants claim plaintiffs have not stated a cause of action under California's Cartwright Act. *See id.* at 15–16. Defendant's motion to dismiss is presently before this Court.

## LEGAL STANDARDS

■ The constitutional prerequisites to standing are (1) an injury in fact which is concrete and not conjectural; (2) a causal connection between the injury and defendant's conduct or omissions; and (3) a likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

A motion to dismiss for failure to state a claim will be denied unless it appears that the plaintiff can prove no set of facts which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

## DISCUSSION

### A. Plaintiffs' Standing to Sue

Defendant argues that, as consumers, plaintiffs lack standing to bring claims under the antitrust doctrine of essential facilities. Defendant further asserts that plaintiffs lack standing to sue because they cannot establish antitrust injury. Because standing is an essential element of this Court's jurisdictional power, issues of standing are considered at the outset.

### 1. Standing to Assert an Essential Facilities Claim

■ The "essential facilities" theory is one of two related rubrics under which courts analyze claims that a monopolist has unlawfully refused to deal with another company. *See* Julian O. von Kalinowski, et al., 2 Antitrust Laws and Regulation § 25.04[3][a], 69–70 ("von Kalinowski"). The doctrine imposes liability when a firm controlling a facility that cannot be duplicated denies a second firm reasonable access to a product or service that the second firm requires to compete with the first. *See Alaska Airlines v. United Airlines, Inc.,* 948 F.2d 536, 542; *Anaheim v.*

*Southern California Edison Co.,* 955 F.2d 1373, 1380 (9th Cir.1992).

Defendant argues that plaintiffs, as consumers, lack standing to assert claims based on the essential facilities theory. *See* Def.'s Mot. to Dismiss at 3:16–5:6. In support of its argument, defendant makes reference to a line of cases including *Stein v. Pacific Bell* (C 00–2915 SI) currently pending before this Court. In *Stein,* a putative class action, a consumer alleged that Pacific's denial of access to its equipment to would-be competitors in the market for Digital Subscriber Line ("DSL") service violated the antitrust laws. *See* Order Granting Defendants' Motion to Dismiss with Leave to Amend, filed February 14, 2001 (submitted as Ex. 2 to Decl. of Craig E. Stewart), 1:22–24; 2:17–3:3. The Court granted Pacific's motion to dismiss without leave to amend as to Stein's essential facilities claim. *See id.* at 6:19–8:6. The Court did not examine whether Stein had standing to assert the claim, but concluded that he had failed to allege a necessary element: "Stein did not allege that he was denied the use of Pacific Bell's telephone network, nor that he was a competitor in the relevant DSL service market." *See id.* at 7:9–10. In accordance with this Court's decision in *Stein,* and for the reasons stated therein, the Court finds that plaintiffs, as consumers, may not base their antitrust allegations on the essential facilities doctrine. Counts III and IV of plaintiffs' complaint are therefore DISMISSED. The extent to which plaintiffs' purportedly independent counts actually depend upon an essential facilities theory is discussed below.

## 2. Antitrust Injury as an Element of Standing

Defendant argues that plaintiffs, as consumers, suffer injuries "derivative of and secondary to the injury suffered by the competitors themselves," and therefore lack standing to sue. *See* Def.'s Reply at 4, 3–5. Although defendant's opening memorandum makes the argument as to plaintiffs' attempted monopolization claims only, Pacific broadens the argument in its reply to encompass plaintiffs' other claims. *See id.* at 3:27–4:19.

■ An antitrust injury is "an injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." *Atlantic Richfield v. USA Petroleum,* 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990) (citations omitted). In other words, antitrust injury "stems from the competition-reducing aspect or effect of the defendant's behavior." *Id.* Consumers have been held to have standing to sue under the antitrust laws when they suffer a price increase as a result of anticompetitive conduct. *See, e.g., Reiter v. Sonotone Corp.,* 442 U.S. 330, 341, 99 S.Ct. 2326, 60 L.Ed.2d 931; *Forsyth v. Humana, Inc.,* 114 F.3d 1467, 1478 (9th Cir.1997).

■ Plaintiffs' factual assertions as to injury are that by "causing service interruption and disconnection of migrating customers and misleading migrating customers by disparaging the efficacy and legality of CLCs," and by deliberately adopting a flawed internal process to handle customer migration, Pacific maintained its monopoly over the local telephone market. *See* Compl. at ¶¶ 21–23. As a result, claim plaintiffs, consumers were forced to remain subscribed to Pacific's services, continuing to pay supracompetitive rates, even when competitors offered lower rates. *See id.* at ¶¶ 25–27. These acts may amount to breaches of Pacific's interconnection contracts with its competitors. The Court finds, however, that they are directed at Pacific's customers. It is the customers who were allegedly misled and whose service is claimed deliberately to have been interrupted to obstruct competition. The resultant injury, having to pay

higher prices than they would in the presence of competition, is sufficient to support standing. Plaintiffs have, therefore, carried their burden to demonstrate that they have standing to sue under the antitrust laws.[1]

██ Plaintiffs' attempted monopolization claim is the focus of defendant's argument regarding antitrust injury. *See* Def.'s Mot. to Dismiss at 6:2–7:14. In opposition, plaintiffs point to defendant's failure to cite any controlling authority; plaintiffs themselves make reference to two Ninth Circuit opinions they claim supports standing, and in addition, this Court's denial of Pacific's motion to dismiss an attempted monopolization claim in *Stein. See* Pls.'s Oppo. at 21:14–22–11. For the reasons supporting standing as to the monopolization claims, the Court finds plaintiffs also have standing to sue for attempted monopolization. Plaintiffs have alleged that Pacific's supracompetitive rates stem from its anticompetitive practices. Pacific's alleged practices, while doubtless also injurious to would-be competitors, are directed at individual consumers who attempt to migrate to competitors, and, plaintiffs allege, directly injure customers who wish to migrate and those who do not. Whether plaintiffs can sustain their burden of proof as to injury is another matter, but the Court finds plaintiffs have made allegations sufficient to support standing.

**B. Dismissal of Plaintiffs' Antitrust Claims Under FRCP 12(b)(6)**

██ To survive a motion to dismiss their monopolization claim, plaintiffs must allege, in addition to antitrust injury: "(1) the possession of monopoly power in the relevant market and (2) the willful acquisi-

tion or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 481, 112 S.Ct. 2072, 119 L.Ed.2d 265(1992) (citations omitted); *Cost Management Services, Inc. v. Washington Natural Gas Co.,* 99 F.3d 937, 949 (9th Cir.1996). The essential elements of a cause of action for attempted monopolization are: "(1) specific intent to control prices or destroy competition; (2) predatory or anticompetitive conduct directed at accomplishing that purpose; (3) a dangerous probability of achieving 'monopoly power'; and (4) causal antitrust injury." *Rebel Oil Co., Inc. v. Atlantic Richfield Co.,* 51 F.3d 1421, 1433 (9th Cir.1995) (citations omitted).

**1. Plaintiff's Antitrust Claim Absent an Essential Facilities Theory**

Having found that plaintiffs cannot base their claims on a theory of essential facilities, the Court now turns to whether plaintiffs can make allegations sufficient to state an antitrust claim under some other theory. In addition to alleging counts of monopolization and attempted monopolization "through denial of essential facilities and refusal to deal," plaintiffs bring causes of action for monopolization and attempt that, although arising from the same conduct by defendant, do not explicitly depend upon an essential facilities theory. *See* Compl. at ¶¶ 53–66. Defendant argues that plaintiffs' purportedly freestanding monopolization claims in fact depend upon an essential facilities theory.

██ The Ninth Circuit has squarely rejected the contention that the "essential

1. Because the Court has already held that plaintiffs lack standing to bring claims under a theory of essential facilities, the Court does not address defendant's argument in reply

that the cases cited by plaintiff to support standing did not involve essential facilities claims. *See* Def.'s Reply at 2:12–3:26.

facilities" theory is the sole vehicle for an antitrust claim. *See Image Technical Services, Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1209 (9th Cir.1997). In cases where a monopolist allegedly refuses to deal with competitors, the alternative avenue of argument focuses on the defendant's intent to create or maintain a monopoly. *See* von Kalinowski, § 25.04[3], 25–26. This rubric is echoed in the essential elements of causes of action for monopolization and attempted monopolization. A line of Supreme Court cases finds illegal conduct based on the defendant's intent. *See, e.g., Eastman Kodak Co. v. Southern Materials Co.,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927); *Lorain Journal Co. v. United States,* 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162 (1951); *Otter Tail Power Co. v. United States,* 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973). By alleging the elements of a cause of action as articulated by the Supreme Court in *Kodak,* including the requisite intent by defendant, plaintiffs can sustain a claim for monopolization without relying on the essential facilities doctrine.

## 2. Antitrust Law and the Telecommunications Act

Relying on the Seventh Circuit's decision in *Goldwasser v. Ameritech Corp.,* 222 F.3d 390 (2000), defendant asserts plaintiffs' factual allegations amount to nothing more than a claim that Pacific has violated the Telecommunications Act, and that such allegations fail to state a claim under the antitrust laws. *See* Def.'s Mot. to Dismiss at 6:15–14:23; Def.'s Oppo. at 6:17–9:13. Defendant argues that the antitrust laws impose no duty of affirmative assistance to customers wishing to migrate to a competitor. *See id.* Pacific's position in this regard appears well grounded. *Goldwasser* held that the Act "imposes duties on ILECs that are not found in the antitrust laws. Those duties do not conflict with the antitrust laws either; they are simply more specific and far-reaching obligations that Congress believed would accelerate the development of competitive markets." *Goldwasser,* 222 F.3d at 401. The *Goldwasser* court dismissed all claims in the plaintiffs' complaint, finding the complaint "focuses tightly" on duties imposed by the Act. *See id.* at 399–400.

In *Stein,* this Court contrasted the requirements of the Act, which require substantial cooperation by incumbents with competitors, against the normal antitrust law which generally protects the right of a business to deal, or refuse to deal, with other businesses at will. *See Stein* at 5:14–6:4. This Court concluded that a violation of the Telecommunications Act "does not automatically equate to a violation of the Sherman Act." *See id.* at 6:1–2. Judge Legge came to a similar conclusion in *Caltech. See* Stewart Decl., Ex. 1, ¶¶ 2–3. In *Stein,* this Court agreed with Pacific that antitrust laws impose no duty on Pacific to cooperate with its competitors. *See Stein* at 9:19–21. Examining the Supreme Court's decision in *Aspen Skiing,* however, the Court also found that the absence of a duty to deal with competitors is not unqualified. *See id.* at 9:19–10:4; *Aspen Skiing v. Aspen Highlands Skiing Corp.,* 472 U.S. 585, 600–602, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985). This Court concluded that an allegation that a defendant violated the Telecommunications Act in a "predatory" manner as defined in *Aspen Skiing* states a cause of action under the Sherman Act. *See Stein* at 10:5–26.

▇ In the instant case, the complaint contains allegations sufficient to state a claim for monopolization as it was articulated in *Kodak:* defendants allege possession of monopoly power, ¶¶ 54–55, anticompetitive acts to maintain a monopoly, ¶ 57, intentionality, ¶¶ 59–60, and resultant injury to plaintiffs, ¶¶ 58, 61. The alleged anticompetitive acts, moreover, involve not a mere "refusal to deal" with

competitors but affirmative conduct to thwart competition. Plaintiffs accuse Pacific of deliberately interrupting and disconnecting service to migrating customers, delaying handling of their orders, and misrepresenting the "efficacy and legality of the CLCs." *See id.* at ¶ 20.

In addition, plaintiffs have met the requirements for the specific circumstances of alleged noncompliance with the Telecommunications Act articulated by this Court in *Stein.* They have alleged violation of the Act, ¶¶ 18–21, and intent to accomplish the forbidden objectives of monopolization and maintenance of a monopoly. ¶¶ 57–58; *see Aspen Skiing,* 472 U.S. at 602, 105 S.Ct. 2847 (evidence of intent relevant to characterization of conduct as "predatory"). Finally, plaintiffs have stated the elements of a claim for attempted monopolization: market power, ¶ 63, anticompetitive conduct and specific intent to monopolize, ¶ 64, dangerous probability of actual monopolization, ¶ 65, and injury, ¶ 66. Dismissal is therefore not proper as to Counts I and II of plaintiffs' complaint.

### C. Plaintiffs' Cartwright Act Claims

Finally, defendant claims that plaintiffs' Cartwright Act claims should be dismissed, arguing that the Act does not reach unilateral conduct. *See* Def.'s Mot. to Dismiss at 15:1–15. By its terms, the Cartwright Act does not apply to unilateral conduct. *See* Cal. Bus. & Prof.Code § 16720 (defining a "trust" as a "combination of capital, skill or acts by two or more persons" for prohibited purposes). To maintain a cause of action under the Cartwright Act, plaintiffs must allege "the formation and operation of the conspiracy," in addition to illegal acts in restraint of trade. *G.H.I.I. v. MTS, Inc.,* 147 Cal.App.3d 256, 265, 195 Cal.Rptr. 211 (Cal.Ct.App.1983). It is also established, however, that "[i]f a 'single trader' pressures customers or dealers into pricing arrangements, an unlawful combination is established, irrespec-

tive of any monopoly or conspiracy, and despite the recognized right of a trader to determine with whom it will deal." *Id.* (citations omitted).

Plaintiffs' complaint contains specific allegations of coercive acts by Pacific, namely, misrepresentations made to customers to prevent their migration to competitors, and interruption and disconnection of their telephone service. Although not accomplished by means of overt threats, Pacific's alleged affirmative acts amount to coercion for the purposes of the Cartwright Act. In addition, it is established that the Sherman Act and Cartwright Act are to be interpreted in harmony with one another. *See, e.g., Redwood Theatres, Inc. v. Festival Enterprises, Inc.,* 908 F.2d 477, 481 (9th Cir.1990). Interpretation of federal antitrust law is, moreover, applicable to the Cartwright Act. *See, e.g., Chicago Title Insurance Co. v. Great Western Financial Corp.,* 69 Cal.2d 305, 315, 70 Cal.Rptr. 849, 444 P.2d 481 (1968). The Court has found plaintiffs' allegations sufficient to sustain a claim of monopolization under federal law. Plaintiffs have, therefore, stated a claim under the Cartwright Act.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (docket # 25, C–01–0260 SI) is GRANTED with respect to Counts III and IV of plaintiffs' complaint. With respect to the remaining counts, defendant's motion is DENIED.

**IT IS SO ORDERED.**